E-FILED
Thursday, 23 October, 2025  05:18:15 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

May 30, 2024

IN THE CIRCUIT COURT
FOR THE SEVENTH JUDICIAL CIRCUIT


THE PEOPLE OF THE STATE OF ILLINOIS,

      Plaintiff,

vs.

3M COMPANY,

      Defendant.
_____


AUDIO RECORDING

FILE NAME: Dab.23-3031.23-3031_05_30_2024

DATE TAKEN:    5/30/2024


Transcribed By:  Kurstin Strange, AAERT #2539

May 30, 2024

```
1   APPEARANCES

2

3        On behalf of The People of the State of Illinois:
           BY: LEIGH J. JAHNIG, ESQUIRE
4          APPEARED IN PERSON

5

6        On behalf of 3M Company:
           BY: MICHAEL ANTHONY SCODRO, ESQUIRE
7          APPEARED IN PERSON

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

May 30, 2024

1                                    INDEX

2
                                                                PAGE
3    RECORDING                                                  3
     CERTIFICATE OF TRANSCRIPTIONIST                            23
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

May 30, 2024

1       THE COURT:  Case for oral argument is Appeal No.

2   23-3031, People of the State of Illinois v. 3M Company.

3   Whenever you're ready, Mr. Scodro.  Good morning.

4       MR. SCODRO:  Good morning.  Thank you, Your Honor.

5   May it please the Court, Counsel.  Michael Scodro on behalf of

6   the defendant, Appellant 3M.  This court's decision in Baker is

7   controlling, and requires reversal of the remand order below.

8       Indeed, at this point, the State says it would

9   subtract out damages caused by AFFF PFAS in calculating damages

10  when chemically identical AFFF PFAS and Cordova PFAS is

11  commingled, but that's exactly what the plaintiffs tried to do

12  in Baker, where this court correctly recognized that a federal

13  court must perform those allocations.

14      But in any event --

15      THE COURT:  Counsel, wasn't Baker different?  In

16  Baker, they were talking about the -- the -- the freon, backing

17  out freon, but there wasn't an -- an acknowledgment that that

18  meant that they'd back out exposure to lead and arsenic.

19      Here, we're not even necessarily talking about

20  exposure paths.  We're not talking about something where only

21  part of it was disclaimed.  We're talking about fixed sites and

22  environmental claims.

23      MR. SCODRO:  But Your Honor, in -- in Baker, as in

24  this case, the freon was a source of the chemicals that were

25  being challenged.  Just as here, AFFF houses precisely the same

May 30, 2024

1   PFAS chemical, identical to the PFAS being talked about in the

2   Cordova facility.  So the sources -- just as in that case, the

3   sources of the self-same chemical are different.  And the

4   question is which court ought to do that apportionment.

5            And as this court correctly recognized in Baker, and

6   you contrast it with the decision below in Baker, which, by the

7   way, relies on a case like Kelleher, precisely the same

8   authority being relied upon by the state in this case.

9            It's clear that this court was rejecting the idea

10  adopted by the District Court in Baker, that that apportionment

11  is not part and parcel of the defense.  It isn't something that

12  ought to be in front of a federal court.

13           And I do want to add, Your Honor, that while we're

14  talking about apportionment of damages and parts of the briefs

15  are devoted to that, there's another argument at issue here too,

16  which I think is logically prior, and that is, looking at the

17  complaint, the complaint also seeks significant injunctive

18  relief.  Monitoring, remediation, air and water.  Investigation.

19  Public information.

20           There's no suggestion as to how one could go about

21  allocating injunctive relief in this case, consistent with, as

22  we point out in our brief, Page 218 in the record, A-218 and the

23  -- and the footnote on that page, which shows that, in the trial

24  court, even as to damages, putting aside injunctive relief,

25  there was a stated effort on the part of the state to collect

May 30, 2024

1  for an entire site or resource if some of the contamination

2  there -- some of the PFAS originated from the armory.

3           So you really have two levels.  The first is,

4  is apportionment even going to be possible?  Certainly not as to

5  the injunctive relief, and that was, again, not the position of

6  the state below, even as to damages.  But even if you could,

7  then we get to Baker.

8           And Baker tells us that those complex apportionment

9  decisions are for the courts to make, and it did so with good

10  reason.  Just prior to that, in Baker, the Baker decision

11  recognizes that, with the 2011 amendment, relate to is now added

12  to for, and that Congress was intending to broaden the scope of

13  cases that would be brought into federal court where there was a

14  potential for a federal officer argument to be raised, as it --

15  as it is here.

16           And clearly -- to put it in very simple terms,

17  clearly, the question of whether and to what extent a particular

18  site is contaminated by or contains AFFF that is mil-spec from

19  an armory, clearly that question relates to the production of

20  mil-spec or the use of mil-spec at the armory.  It seems

21  self-evident.

22           THE COURT:  Mr. Scodro, is 3M the only company that

23  manufactures this mil-spec AFFF, or do other companies

24  manufacture it?

25           MR. SCODRO:  So in the -- the PFAS that's used in the

1  -- these products, and so there -- there's -- there are multiple

2  layers here.  And in some of the cases around the country, Your

3  Honor, there are other defendants in play.

4        So PFAS is produced, or was produced, by multiple

5  companies, and there were also multiple sources of AFFF.  Now,

6  certainly 3M -- yes?

7        THE COURT:  I'm sorry.  Certainly, 3M -- you're one of

8  the producers, but not the sole --

9        MR. SCODRO:  Not the sole producer, but we --

10       THE COURT:  So I didn't see anything here alleging

11 that the mil-spec AFFF that was used at the Rock Island Arsenal

12 was actually produced by 3M.

13       MR. SCODRO:  So, Your Honor, in our notice of removal,

14 treated as a pleading here, we certainly take on the

15 responsibility for having been the producer of mil-spec at the

16 armory.  And --

17       THE COURT:  I don't want to waste your argument

18 time --

19       MR. SCODRO:  No, of course.

20       THE COURT:  Maybe on rebuttal, you could come back and

21 just identify where that is that it's clear that 3M is the

22 producer, alleging that it's the producer of the chemical at

23 issue here.

24       MR. SCODRO:  Of the chemical at issue.  Sure.  And I

25 -- and I mean to be precise.  A producer.  I'm not suggesting we

1  took on --

2          THE COURT:  You clearly have stated that you were a

3  producer of mil-spec AFFF, but I didn't see where you were --

4  alleged that you were a producer of the mil-spec AFFF used at

5  the Rock Island Arsenal.

6          MR. SCODRO:  Okay.  Well, then certainly -- that is

7  certainly our position, Your Honor, and --

8          THE COURT:  Okay.

9          MR. SCODRO:  -- I can represent that.  I will come

10 back with -- yeah.  That's -- that's -- that's --

11         THE COURT:  Because, obviously, if you're not the

12 producer of it --

13         MR. SCODRO:  Sure.

14         THE COURT:  -- all of your arguments go away.

15         MR. SCODRO:  Right.  No, we have certainly -- and --

16 and it is certainly within the -- the -- yes, I'll --

17         THE COURT:  Okay.

18         MR. SCODRO:  I'll identify that.

19         THE COURT:  Thank you.

20         MR. SCODRO:  But certainly within the -- the pleading,

21 it certainly has been our intent that that is the plausible

22 allegation in the -- in the notice of removal.

23         THE COURT:  So if you prevail here, is every lawsuit

24 involving the PFAS anywhere down river of the Rock Island

25 Arsenal removal against 3M removable to federal court?

May 30, 2024

1        MR. SCODRO:  If the claim is -- if there is a
2   plausible argument that -- and that is the -- the standard.
3   There -- there -- there's a plausible allegation, and here we
4   support it with, you know, the -- the military's own -- Army
5   Corps' own report attached to our notice of removal.

6        If there's an allegation that -- that we -- that --
7   that mil-spec AFFF has commingled and that it's going to require
8   this aggregation -- and again, here, as to the injunctive relief
9   claims, I don't even know how you'd start that.  But even as to
10  the damages claim, where they're claiming that we can
11  disaggregate, that would, under Baker, require a federal court
12  to do that disaggregation.

13       Now, I should note that, of course, they have the
14  opportunity, in responding to a -- a notice of removal to -- to
15  argue and to even -- and some -- some plaintiffs have done so --
16  to provide evidence to the contrary that that is not a plausible
17  allegation.

18       So for example, an isolated -- I'm going to make this
19  up.  An isolated pond for which there is no, you know, possible
20  claim, no plausible argument within Twombly and Iqbal.  The
21  applicable standard, no plausible argument of cocontamination.
22  Under those circumstances, then I think the Court would be well
23  within its rights to conclude that that was not plausibly
24  alleged in the notice of removal.  No disaggregation required
25  under those circumstances.  So yes.

May 30, 2024

```
1          So again, I -- and I know I'm -- I'm about to encroach
2   on rebuttal time, but I -- I do just want to close the opening
3   by saying, we really have two levels here.  Again, one, it seems
4   quite clear, as their own notice of remand -- motion to remand
5   made clear, 218 is the most obvious place.
6          The -- the -- there will be instances, perhaps on the
7   damages side, certainly on the injunctive relief side, where we
8   will have to be spending money to remediate or otherwise, under
9   their view, account for mil-spec AFFF.  And even if all of that
10  were apportionable, if we ignore the injunctive claims and we
11  look solely at damages, even if one could disaggregate in the
12  manner suggested, that's precisely what Baker requires to happen
13  in a federal court.
14          THE COURT:  Thank you.  Ms. Jahnig, good morning.
15          MS. JAHNIG:  Good morning, Your Honor.  And may it
16  please the Court.  Assistant Attorney General Leigh Jahnig for
17  the Appellee, the State of Illinois.
18          3M failed to plausibly allege both the third and the
19  fourth prong of federal officer removal for essentially the same
20  reason, and that is that this case does not present any federal
21  issue.
22          THE COURT:  So let me ask you about that.  Does that
23  mean that the State of Illinois, at trial, will concede that if
24  the toxins were commingled, there is no liability to 3M?  None?
25  Zero?
```

May 30, 2024

1          MS. JAHNIG:  If there's any particular place where the

2    State cannot prove that contamination came from Cordova, then

3    yes, the State --

4          THE COURT:  No, I asked about commingling.  You got to

5    answer my question.  I asked about commingling.  If the toxins

6    are commingled, does that mean that Illinois loses?  Is that

7    what you're going to tell the jury --

8          MS. JAHNIG:  Yes.

9          THE COURT:  -- in the opening statement?

10         MS. JAHNIG:  Yes, Your Honor, because --

11         THE COURT:  There's no apportionment whatsoever?

12         MS. JAHNIG:  Yes.  And -- and -- and I think -- I'm

13   sorry.  I think I was just -- I think those things mean the same

14   thing.  3M kind of keeps talking about commingling, but that's

15   really just another way of saying that we will not have proved

16   that contamination came from Cordova, right, if the source of

17   the contamination --

18         THE COURT:  Well, no -- no, not really.  And I think

19   your brief dances around this issue a little bit.  I think

20   there's a difference between saying that if there is

21   commingling, 3M wins.  It could be five percent from one

22   facility and 95 percent from another facility.  There is no

23   apportionment.

24         As long as that five -- five percent came from

25   Facility A, 3M wins.  Nobody will apportion the amount of the --

May 30, 2024

1  of the amount of contaminant that came from Facility B.  Is that

2  your position?

3          MS. JAHNIG:  Yes, Your Honor.  And because I think

4  that, you know, part of 3M's argument is really talking about,

5  you know, commingling at a site.  But the -- you know, the --

6  the --

7          THE COURT:  I think it's talking about commingling at

8  multiple sites or --

9          MS. JAHNIG:  Yes, and --

10         THE COURT:  -- commingling in the river.  And I think

11  what -- what -- I -- I think they would be happy -- I mean, I

12  think with that concession, they would be happy.  I think.  But

13  I don't -- I didn't get that from the brief, that that's the

14  concession that you're making.

15         MS. JAHNIG:  Well, our position is, you know, perhaps

16  there's -- perhaps there's some part of the environment where

17  everything is all mixed up.  It's all commingled, and we can't

18  prove that contamination came from Cordova.  There might be

19  another part of the environment, maybe not in the river, but on

20  the banks of the river, something like that, where we can prove

21  that it came from Cordova.

22         And in that instance, the State would recover and it

23  wouldn't implicate any (indiscernible) issue --

24         THE COURT:  You have to prove that 100 percent of the

25  contamination came from Cordova, right?  That you -- you concede

May 30, 2024

1    that?

2            MS. JAHNIG:  Yes.  I -- I -- I -- and I think 3M is

3    kind of trying to say, well, we're just seeking to recover for

4    contamination all in one place.

5            THE COURT:  No.  I -- I -- I -- I think 3M's argument

6    is different.  I think 3M is saying -- and I -- and I -- I read

7    this in your brief a little bit.  I think 3M is saying that the

8    State kind of wants to have it both ways.

9            The State wants to be able to make an argument in the

10   State court that there's commingling of these toxins, that some

11   came from Cordova but not all.  And then the State court will

12   have to apportion what amount came from Cordova and what amount

13   came from other facilities.

14           But I think it's different if, in opening statements,

15   you know, the State of Illinois says if 3M -- if -- if -- if --

16   I guess, if the State can't establish that all of the toxins

17   came from another facility.  In other words, if -- if -- if the

18   -- if the State fails in its burden to establish that 100

19   percent of the toxins came from a different facility, 3M wins.

20   Full stop.

21           MS. JAHNIG:  So our position is -- is still that we're

22   talking about a -- a -- a -- an area that's not, you know, sort

23   of a -- a tiny place.  So we might be able to prove that all of

24   the contamination came from Cordova in one place, which case we

25   -- we would recover.  And in another place, we couldn't prove

May 30, 2024

1    that, and then we would not recover.  That's our --

2              THE COURT:  Yeah, I got it.  I mean, that -- that --

3    that's a big concession.

4              MS. JAHNIG:  And -- and I -- and I -- and I think, you

5    know, that's -- we've sort of -- 3M kind of takes -- makes this

6    argument that we've been changing our position here, but I think

7    we're just trying to say in as many ways as possible that this

8    case is about, is contamination come from Cordova or did it come

9    from something else?

10             THE COURT:  And --

11             MS. JAHNIG:  It came from -- I'm sorry.

12             THE COURT:  Go ahead.  But -- but that totally

13   distinguishes Baker, because there's no -- I mean, it seems like

14   these are two ships crossing in the night, at least the

15   arguments, because what you're saying is Baker is totally

16   irrelevant because there is no apportionment necessary in this

17   case, period.

18             MS. JAHNIG:  That's exactly right.  In Baker, there

19   was -- you know, the plaintiffs were seeking to recover for

20   contamination at -- you know, from one super fund (phonetic)

21   site, and then they were trying to carve out, you know, a piece

22   that was due to federal activities.

23             Here, what we're saying is we want to recover for

24   contamination from Cordova.  That's it.  So --

25             THE COURT:  So I had the --

May 30, 2024

1    MS. JAHNIG:  -- there's nothing really to carve out.

2    THE COURT:  I had the same question as Judge Kirsten

3  (phonetic), and I just want to ask it a little bit differently

4  to make sure I understand the State's position.

5    So if 3M comes in, if you're talking about the water

6  or the bank or any portion, and they show that there is AFFF in

7  there, or I don't even think they have to show mil-spec AFFF.

8  If they show that there's AFFF that caused the -- that's

9  contaminated there, you will not seek to recover damages from

10  that location, whether it's water, the bank, etcetera, because

11  you've excluded that from what you're seeking?

12    MS. JAHNIG:  Yes.  That -- and that's what the

13  complaint says.  The complaint says, we're seeking to recover

14  for contamination that came from Cordova.  So --

15    THE COURT:  And then the next question is, you would

16  not ask the Court or the jury at that point to say, well, sure,

17  there might be some AFFF in there, but they've only proven that

18  goes to ten percent of the contamination.  Cordova caused the

19  other 90 percent, and therefore, we can recover that 90 percent;

20  is that correct?  You were not going to make an argument like

21  that?

22    MS. JAHNIG:  That's right.  I mean, I -- and, you

23  know, and -- and maybe I'm -- maybe there was some confusion in

24  the briefing.  I mean, again, we're talking about an area that's

25  -- you know, there could be contamination over here from Cordova

May 30, 2024

```
1    and not from over here.  So we'd say to the jury, well, give us
2    recovery from -- for this part and not that part.
3              THE COURT:  We just want to make clear --
4              MS. JAHNIG:  We talk about --
5              THE COURT:  -- that the -- your argument about Cordova
6    is not going to require any finder of fact to do any kind of
7    apportionment about what may or may not have come from 3M or
8    AFFF.  And it sounds like you were agreeing you're not going to
9    argue that?
10             MS. JAHNIG:  That's right.
11             THE COURT:  Okay.
12             MS. JAHNIG:  Right.  And -- and -- and importantly,
13   this -- this argument is the same, whether, you know, the
14   something else that is not Cordova that caused any given
15   contamination.  It doesn't matter whether that is mil-spec AFFF,
16   whether 3M made it, or whether it's a completely different
17   chemical -- excuse me, chemical.
18             If it's not from Cordova, then the State will not
19   recover.  That's why the State brought this case specifically
20   about this one facility, where we have a lot of information
21   about, you know, 3M and its manufacturing there.  And so wanting
22   to, you know, get this one case moving as opposed to, you know,
23   these other cases about PFAS and AFFF, where we have to do a lot
24   more apportionment and factfinding questions.
25             THE COURT:  And counsel, you started that sentence
```

May 30, 2024

1   with, if it's not for -- from Cordova, we're not going to

2   recover.  I just -- I just want to retread this once more.  What

3   you're really saying is, if it's not all from Cordova, you're

4   not going to recover; is that accurate?

5          MS. JAHNIG:  I -- I mean, I guess, again, this sort of

6   comes down to, like, what are we talking about?  You know, on a

7   site, if -- if -- if over here, at this part of the bank of the

8   river, we can say that's all from Cordova, then we would

9   recover.

10         If over here, we say, you know, the -- it -- it cannot

11  be -- we can't prove that it came from Cordova, then we don't

12  recover.  I mean, when we're talking about all, I -- I don't

13  think it's -- it -- it is not the State's position that.

14         THE COURT:  It's location-specific.

15         MS. JAHNIG:  Yes.

16         THE COURT:  In each location, you have to prove it all

17  came from Cordova.

18         MS. JAHNIG:  Right.  And at this point, early in the

19  case, we can't say, you know, what those locations are.  That's

20  all -- so that -- that's why I -- you know, I don't want to say,

21  oh, if it -- it can -- if it can be -- if we can't prove it in

22  one location, we're precluded from recovering in any other

23  location.

24         THE COURT:  I think it's --

25         MS. JAHNIG:  That is not the State's position.

May 30, 2024

1       THE COURT:  Where you put the all.  I mean, we're

2  putting the focus of all on the --

3       MS. JAHNIG:  Any -- any particular location.

4       THE COURT:  And -- or the all on -- it all has to be

5  Cordova, that part of the contamination cannot be the AFFF at

6  any location?

7       MS. JAHNIG:  I'm sorry.  I'm --

8       THE COURT:  The -- all -- you have to prove that,

9  whatever location you're talking about, that all of the damage

10  there arose from the Cordova and nothing else?

11       MS. JAHNIG:  That's correct.

12       THE COURT:  Okay.

13       MS. JAHNIG:  And that is -- that is what -- that is

14  what our complaint has alleged.  That's what we argued in our

15  brief in support of remand.  We said this case is about

16  contamination that was caused by Cordova, so what we have to

17  prove in order to recover is that contamination was caused by

18  Cordova.

19       Maybe it's -- maybe it's the whole area that we think

20  is contaminated by Cordova.  Maybe it's just one piece of it.

21  Maybe it's none of it.  We can't say at this point.  But

22  regardless of whether -- you know, regardless of the answer to

23  that question, if it's not from Cordova, then the State won't

24  recover, and we don't get into any questions of federal defenses

25  over even what that -- what that thing that is not Cordova is.

May 30, 2024

1  It doesn't even matter.

2          And, you know, I -- we made this argument many times

3  in the District Court.  It's the same argument that we're making

4  here.  And sort of -- there's been no change in position, and

5  that's plain from the face of the complaint.

6          THE COURT:  It seems that you were alleging your

7  allegations here in order to avoid the MDL.  Is -- should that

8  concern us at all?

9          MS. JAHNIG:  No, because this is not -- you know, this

10  case is not -- it's very different from the cases that were

11  presented, you know, that were brought into the MDL.  This is a

12  case about a specific manufacturing facility where we have a lot

13  of information about, you know, what's being dumped into the

14  river, what chemicals there are, how elevated the levels are,

15  and the fact that 3M is the one that manages it.

16          As opposed to the MDL, which has a lot of questions

17  just about -- you know, there's -- there's many defendants,

18  even, in that case about, you know, where the PFAS got, into

19  what drinking water?  Who made it?  What was the source?  That's

20  a lot of -- you know, and so we just didn't want this case to

21  get bogged down into all of those factfinding questions.

22          And that's another reason why this doesn't present the

23  claims or the -- excuse me, the sort of artful pleading issues

24  in Baker.

25          THE COURT:  Okay.  Thank you.

May 30, 2024

1          MS. JAHNIG:  Unless the --

2          THE COURT:  Mr. Scodro?

3          MR. SCODRO:  Thank you, Your Honor.  To first address

4   Your Honor's question, on Page A-33, which is Page 14 of the

5   removal papers, we say, the State claims -- the State's claims

6   for PFAS contamination of natural resources downstream from the

7   Cordova facility -- facility plausibly arise, in part, from 3M's

8   production and sale of AFFF manufacture according to military

9   specifications established by the Department of Defense.

10          Such mil-spec AFFF was then used, stored, and disposed

11   by the U.S. military installations in the State of Illinois,

12   including at least the Rock Island Arsenal.

13          So from there, Your Honor, we would say we --

14          THE COURT:  Okay.

15          MR. SCODRO:  -- have certainly plausibly alleged that

16   we are the manufacturer.

17          THE COURT:  Thank you for answering that.

18          MR. SCODRO:  I -- I would like to address the -- the

19   point just made and the characterization.  So a -- just a couple

20   of quick points.

21          First, there has been a change.  As we point out in

22   A-218, the argument was actually made in -- in their remand

23   papers saying that there -- it is not an argument that 3M should

24   be excused from liability for damages caused by the U.S. Army's

25   discharge of mil-spec AFFF, and then a footnote discussing joint

1  and several liability.

2          As the briefs, I think, acknowledge, that isn't the

3  precisely correct term, but the notion was that there would have

4  been liability assigned more broadly and --

5          THE COURT:  Not anymore.

6          MR. SCODRO:  Well, and -- and so I'll just --

7          THE COURT:  You -- you had to get what you wanted

8  there.

9          MR. SCODRO:  I'll just end with -- by saying, Your

10 Honor, during the -- during the exchange, there was a discussion

11 of this part and that part, your -- the -- the term location was

12 used, and then the reference to just one piece.

13         And I -- I -- I guess I would just say that, if Baker

14 is talking about the need for a complex factual determination,

15 the sort of small piece allocation, it's unclear at what micro

16 level that's occurring is, itself, precisely what Baker is

17 talking about, in talking about the need for those kinds of

18 allocations to occur in federal court.

19         So I -- I don't see a distinction, although obviously

20 if -- and -- and, you know, the same would go for -- and I

21 realize I'm over my time.

22         THE COURT:  Go ahead.  You can finish answering.

23 Finish.

24         MR. SCODRO:  Thank you, Your Honor.  Thank you, Your

25 Honor.  Same would go for the remedial measures.  It's hard to

May 30, 2024

1  imagine that the remedial measures, including cleaning

2  groundwater, for example, or the other types that are talked

3  about, even air remediation, how that could occur on the kind of

4  micro place location level we're talking about.

5          And again, I just think all of that suggests that --

6  that that's exactly the concern that Baker had in mind in

7  discussing complex factual determination, something they have

8  said in their brief a couple of times correctly, would require.

9          THE COURT:  Okay.  Thank you, Mr. Scodro.

10         MR. SCODRO:  Thank you, Your Honor.

11         THE COURT:  The Court will take the case under

12 advisement.  Thanks to both counsel.  The final --

13

14

15

16

17

18

19

20

21

22

23

24

25

May 30, 2024

```
 1                    CERTIFICATE OF TRANSCRIBER

 2

 3

 4        I, Kurstin Strange, AAERT #2539, do hereby certify that I

 5   was authorized to transcribe the foregoing recorded proceeding;

 6   and that the transcript is a true and accurate transcription, to

 7   the best of my ability, taken while listening to the provided

 8   recording.

 9

10        I FURTHER CERTIFY that I am not of counsel or attorney

11   for either/or any of the parties to said proceedings, nor in any

12   way interested in the events of this cause, and that I am not

13   related to any of the parties thereto.

14

15

16        Dated this 21st day of October, 2025.

17

18

19        _____

20             Kurstin Strange, AAERT #2539

21

22

23

24

25
```

**1**

**100**
  12:24 13:18

**2**

**2011**
  6:11
**218**
  5:22 10:5
**23-3031**
  4:2

**3**

**3M**
  4:2,6 6:22
  7:6,7,12,21
  8:25 10:18,
  24 11:14,21,
  25 13:2,6,7,
  15,19 14:5
  15:5 16:7,
  16,21
**3m's**
  12:4 13:5

**9**

**90**
  15:19
**95**
  11:22

**A**

**A-218**
  5:22
**account**
  10:9
**acknowledgment**
  4:17

**activities**
  14:22
**add**
  5:13
**added**
  6:11
**adopted**
  5:10
**AFFF**
  4:9,10,25
  6:18,23 7:5,
  11 8:3,4 9:7
  10:9 15:6,7,
  8,17 16:8,
  15,23
**aggregation**
  9:8
**agreeing**
  16:8
**ahead**
  14:12
**air**
  5:18
**allegation**
  8:22 9:3,6,
  17
**allege**
  10:18
**alleged**
  8:4 9:24
**alleging**
  7:10,22
**allocating**
  5:21
**allocations**
  4:13
**amendment**
  6:11
**amount**
  11:25 12:1
  13:12
**Appeal**
  4:1
**Appellant**
  4:6
**Appellee**
  10:17

**applicable**
  9:21
**apportion**
  11:25 13:12
**apportionable**
  10:10
**apportionment**
  5:4,10,14
  6:4,8 11:11,
  23 14:16
  16:7,24
**area**
  13:22 15:24
**argue**
  9:15 16:9
**argument**
  4:1 5:15
  6:14 7:17
  9:2,20,21
  12:4 13:5,9
  14:6 15:20
  16:5,13
**arguments**
  8:14 14:15
**armory**
  6:2,19,20
  7:16
**Army**
  9:4
**Arsenal**
  7:11 8:5,25
**arsenic**
  4:18
**Assistant**
  10:16
**attached**
  9:5
**Attorney**
  10:16
**authority**
  5:8

**B**

**back**
  4:18 7:20
  8:10

**backing**
  4:16
**Baker**
  4:6,12,15,
  16,23 5:5,6,
  10 6:7,8,10
  9:11 10:12
  14:13,15,18
**bank**
  15:6,10
**banks**
  12:20
**behalf**
  4:5
**big**
  14:3
**bit**
  11:19 13:7
  15:3
**briefing**
  15:24
**briefs**
  5:14
**broaden**
  6:12
**brought**
  6:13 16:19
**burden**
  13:18

**C**

**calculating**
  4:9
**carve**
  14:21 15:1
**case**
  4:1,24 5:2,
  7,8,21 10:20
  13:24 14:8,
  17 16:19,22
**cases**
  6:13 7:2
  16:23
**caused**
  4:9 15:8,18
  16:14

May 30, 2024

challenged
  4:25
changing
  14:6
chemical
  5:1,3 7:22,
  24 16:17
chemically
  4:10
chemicals
  4:24
circumstances
  9:22,25
claim
  9:1,10,20
claiming
  9:10
claims
  4:22 9:9
  10:10
clear
  5:9 7:21
  10:4,5 16:3
close
  10:2
cocontaminati
on
  9:21
collect
  5:25
commingled
  4:11 9:7
  10:24 11:6
  12:17
commingling
  11:4,5,14,21
  12:5,7,10
  13:10
companies
  6:23 7:5
company
  4:2 6:22
complaint
  5:17 15:13
completely
  16:16

complex
  6:8
concede
  10:23 12:25
concession
  12:12,14
  14:3
conclude
  9:23
confusion
  15:23
Congress
  6:12
consistent
  5:21
contaminant
  12:1
contaminated
  6:18 15:9
contamination
  6:1 11:2,16,
  17 12:18,25
  13:4,24
  14:8,20,24
  15:14,18,25
  16:15
contrary
  9:16
contrast
  5:6
controlling
  4:7
Cordova
  4:10 5:2
  11:2,16
  12:18,21,25
  13:11,12,24
  14:8,24
  15:14,18,25
  16:5,14,18
Corps'
  9:5
correct
  15:20
correctly
  4:12 5:5

counsel
  4:5,15 16:25
country
  7:2
court
  4:1,5,12,13,
  15 5:4,5,9,
  10,12,24
  6:13,22 7:7,
  10,17,20
  8:2,8,11,14,
  17,19,23,25
  9:11,22
  10:13,14,16,
  22 11:4,9,
  11,18 12:7,
  10,24 13:5,
  10,11 14:2,
  10,12,25
  15:2,15,16
  16:3,5,11,25
court's
  4:6
courts
  6:9
crossing
  14:14

---

**D**

damages
  4:9 5:14,24
  6:6 9:10
  10:7,11 15:9
dances
  11:19
decision
  4:6 5:6 6:10
decisions
  6:9
defendant
  4:6
defendants
  7:3
defense
  5:11

devoted
  5:15
difference
  11:20
differently
  15:3
disaggregate
  9:11 10:11
disaggregatio
n
  9:12,24
disclaimed
  4:21
distinguishes
  14:13
District
  5:10
due
  14:22

---

**E**

effort
  5:25
encroach
  10:1
entire
  6:1
environment
  12:16,19
environmental
  4:22
essentially
  10:19
establish
  13:16,18
etcetera
  15:10
event
  4:14
evidence
  9:16
excluded
  15:11
excuse
  16:17

May 30, 2024

**exposure**
  4:18,20
**extent**
  6:17

---

**F**

**facilities**
  13:13
**facility**
  5:2 11:22,25
  12:1 13:17,
  19 16:20
**fact**
  16:6
**factfinding**
  16:24
**failed**
  10:18
**fails**
  13:18
**federal**
  4:12 5:12
  6:13,14 8:25
  9:11 10:13,
  19,20 14:22
**finder**
  16:6
**fixed**
  4:21
**footnote**
  5:23
**fourth**
  10:19
**freon**
  4:16,17,24
**front**
  5:12
**Full**
  13:20
**fund**
  14:20

---

**G**

**General**

  10:16
**give**
  16:1
**good**
  4:3,4 6:9
  10:14,15
**guess**
  13:16

---

**H**

**happen**
  10:12
**happy**
  12:11,12
**Honor**
  4:4,23 5:13
  7:3,13 8:7
  10:15 11:10
  12:3
**houses**
  4:25

---

**I**

**idea**
  5:9
**identical**
  4:10 5:1
**identify**
  7:21 8:18
**ignore**
  10:10
**Illinois**
  4:2 10:17,23
  11:6 13:15
**implicate**
  12:23
**importantly**
  16:12
**indiscernible**
  12:23
**information**
  5:19 16:20
**injunctive**
  5:17,21,24

  6:5 9:8
  10:7,10
**instance**
  12:22
**instances**
  10:6
**intending**
  6:12
**intent**
  8:21
**Investigation**
  5:18
**involving**
  8:24
**Iqbal**
  9:20
**irrelevant**
  14:16
**Island**
  7:11 8:5,24
**isolated**
  9:18,19
**issue**
  5:15 7:23,24
  10:21 11:19
  12:23

---

**J**

**Jahnig**
  10:14,15,16
  11:1,8,10,12
  12:3,9,15
  13:2,21
  14:4,11,18
  15:1,12,22
  16:4,10,12
**Judge**
  15:2
**jury**
  11:7 15:16
  16:1

---

**K**

**Kelleher**

  5:7
**kind**
  11:14 13:3,8
  14:5 16:6
**Kirsten**
  15:2

---

**L**

**lawsuit**
  8:23
**layers**
  7:2
**lead**
  4:18
**Leigh**
  10:16
**levels**
  6:3 10:3
**liability**
  10:24
**location**
  15:10
**logically**
  5:16
**long**
  11:24
**loses**
  11:6
**lot**
  16:20,23

---

**M**

**made**
  10:5 16:16
**make**
  6:9 9:18
  13:9 15:4,20
  16:3
**makes**
  14:5
**making**
  12:14
**manner**
  10:12

May 30, 2024

**manufacture**
6:24
**manufactures**
6:23
**manufacturing**
16:21
**matter**
16:15
**meant**
4:18
**Michael**
4:5
**mil-spec**
6:18,20,23
7:11,15 8:3,
4 9:7 10:9
15:7 16:15
**military's**
9:4
**mixed**
12:17
**money**
10:8
**Monitoring**
5:18
**morning**
4:3,4 10:14,
15
**motion**
10:4
**moving**
16:22
**multiple**
7:1,4,5 12:8

---

**N**

**necessarily**
4:19
**night**
14:14
**note**
9:13
**notice**
7:13 8:22
9:5,14,24

10:4

---

**O**

**obvious**
10:5
**officer**
6:14 10:19
**opening**
10:2 11:9
13:14
**opportunity**
9:14
**opposed**
16:22
**oral**
4:1
**order**
4:7
**originated**
6:2

---

**P**

**parcel**
5:11
**part**
4:21 5:11,25
12:4,16,19
16:2
**parts**
5:14
**paths**
4:20
**People**
4:2
**percent**
11:21,22,24
12:24 13:19
15:18,19
**perform**
4:13
**period**
14:17
**PFAS**
4:9,10 5:1

6:2,25 7:4
8:24 16:23
**phonetic**
14:20 15:3
**piece**
14:21
**place**
10:5 11:1
13:4,23,24,
25
**plaintiffs**
4:11 9:15
14:19
**plausible**
8:21 9:2,3,
16,20,21
**plausibly**
9:23 10:18
**play**
7:3
**pleading**
7:14 8:20
**point**
4:8 5:22
15:16
**pond**
9:19
**portion**
15:6
**position**
6:5 8:7
12:2,15
13:21 14:6
15:4
**potential**
6:14
**precise**
7:25
**precisely**
4:25 5:7
10:12
**present**
10:20
**prevail**
8:23
**prior**
5:16 6:10

**produced**
7:4,12
**producer**
7:9,15,22,25
8:3,4,12
**producers**
7:8
**production**
6:19
**products**
7:1
**prong**
10:19
**prove**
11:2 12:18,
20,24 13:23,
25
**proved**
11:15
**proven**
15:17
**provide**
9:16
**Public**
5:19
**put**
6:16
**putting**
5:24

---

**Q**

**question**
5:4 6:17,19
11:5 15:2,15
**questions**
16:24

---

**R**

**raised**
6:14
**read**
13:6
**ready**
4:3

May 30, 2024

reason
  6:10 10:20
rebuttal
  7:20 10:2
recognized
  4:12 5:5
recognizes
  6:11
record
  5:22
recover
  12:22 13:3,
  25 14:1,19,
  23 15:9,13,
  19 16:19
recovery
  16:2
rejecting
  5:9
relate
  6:11
relates
  6:19
relied
  5:8
relief
  5:18,21,24
  6:5 9:8 10:7
relies
  5:7
remand
  4:7 10:4
remediate
  10:8
remediation
  5:18
removable
  8:25
removal
  7:13 8:22,25
  9:5,14,24
  10:19
report
  9:5
represent
  8:9

require
  9:7,11 16:6
required
  9:24
requires
  4:7 10:12
resource
  6:1
responding
  9:14
responsibilit
y
  7:15
reversal
  4:7
rights
  9:23
river
  8:24 12:10,
  19,20
Rock
  7:11 8:5,24

―――――――

S

Scodro
  4:3,4,5,23
  6:22,25 7:9,
  13,19,24
  8:6,9,13,15,
  18,20 9:1
scope
  6:12
seek
  15:9
seeking
  13:3 14:19
  15:11,13
seeks
  5:17
self-evident
  6:21
self-same
  5:3
sentence
  16:25

ships
  14:14
show
  15:6,7,8
shows
  5:23
side
  10:7
significant
  5:17
simple
  6:16
site
  6:1,18 12:5
  14:21
sites
  4:21 12:8
sole
  7:8,9
solely
  10:11
sort
  13:22 14:5
sounds
  16:8
source
  4:24 11:16
sources
  5:2,3 7:5
specifically
  16:19
spending
  10:8
standard
  9:2,21
start
  9:9
started
  16:25
state
  4:2,8 5:8,25
  6:6 10:17,23
  11:2,3 12:22
  13:8,9,10,
  11,15,16,18
  16:18,19

State's
  15:4
stated
  5:25 8:2
statement
  11:9
statements
  13:14
stop
  13:20
subtract
  4:9
suggested
  10:12
suggesting
  7:25
suggestion
  5:20
super
  14:20
support
  9:4

―――――――

T

takes
  14:5
talk
  16:4
talked
  5:1
talking
  4:16,19,20,
  21 5:14
  11:14 12:4,7
  13:22 15:5,
  24
tells
  6:8
ten
  15:18
terms
  6:16
thing
  11:14

May 30, 2024

**things**
　11:13
**time**
　7:18 10:2
**tiny**
　13:23
**totally**
　14:12,15
**toxins**
　10:24 11:5
　13:10,16,19
**treated**
　7:14
**trial**
　5:23 10:23
**Twombly**
　9:20

---

**U**

**understand**
　15:4

---

**V**

**view**
　10:9

---

**W**

**wanting**
　16:21
**waste**
　7:17
**water**
　5:18 15:5,10
**ways**
　13:8 14:7
**whatsoever**
　11:11
**wins**
　11:21,25
　13:19
**words**
　13:17