## IN THE UNITED STATE DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## ROCK ISLAND DIVISION

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* KWAME RAOUL, Attorney General of the State of Illinois,<br><br>Plaintiff,<br><br>v.<br><br>3M COMPANY, a Delaware Corporation,<br><br>Defendant. | Case No. 25-cv-04189<br><br>Judge Sara Darrow |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO REMAND

Plaintiff, People of the State of Illinois, *ex rel.* Kwame Raoul, Attorney General of the State of Illinois ("People"), for their Memorandum in Support of Motion to Remand, state as follows.

### INTRODUCTION

This Court has already determined that federal jurisdiction does not exist in this matter. The Seventh Circuit affirmed.  The case then proceeded in Rock Island Circuit Court, where the parties had been engaged in discovery in preparation for a specially-set, three-week trial to begin on September 15, 2026.  Defendant 3M Company ("3M" or "Defendant"), in what can only be construed as a desperate effort to delay the state court proceedings and postpone the trial date, once again has removed this case to the Central District of Illinois and attempts to transfer this case to the Aqueous Film-Forming Foam Multidistrict Litigation in the District of South Carolina ("AFFF MDL").

Nothing about the case pertinent to the Rock Island Circuit Court having proper jurisdiction over this matter has changed since this Court's and the Seventh Circuit's prior rulings.  The People have not made an "about-face" or an "extraordinary reversal" as 3M disingenuously claims.  Not.

of Removal, ECF No. 1 at 1, 2.  To the contrary, the People explicitly re-confirmed in the discovery responses at issue that they "intend to proceed in this litigation consistent with the representation made to the Seventh Circuit" and the Seventh Circuit's opinion.  Not. of Removal, Exhibit E, ECF No. 1-6 at 3.  3M's entire claimed basis for removing this case yet again simply does not exist.

As this Court and the Seventh Circuit have already held, the federal officer removal statute does *not* provide a basis for removing this matter to federal court.  The People do not seek in this matter to hold 3M liable for contamination from aqueous film-forming foam conforming to certain military specifications ("MilSpec AFFF"), and the People re-confirmed this position again in their discovery responses.  This case only concerns 3M's release of pollutants from a specific 3M facility—and *not* the discharge or sale of a product that was manufactured according to purported military specifications.  3M still does *not* claim that the government contractor defense—the sole basis for its removal—applies to its discharges of perfluoroalkyl and polyfluoroalkyl substances ("PFAS") from its PFAS manufacturing facility in Cordova, Illinois ("Cordova Facility"), a fact acknowledged by both this Court and the Seventh Circuit. *People ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024); *People ex rel. Raoul v. 3M Co.*, 693 F. Supp. 3d 948, 957 (C.D. Ill. 2023).  The People respectfully request that the Court remand this case at its earliest opportunity in light of the specially-set, three-week trial next fall and award the People their attorneys' fees and costs for 3M's objectively unreasonable removal.

## BACKGROUND

On March 16, 2022, the People filed their Complaint against 3M in the Rock Island County, Illinois Circuit Court.  3M removed the case for the first time on April 21, 2022.  3M argued that MilSpec AFFF from the Rock Island Arsenal may have commingled with PFAS contamination emanating from the Cordova Facility.  The People responded that they are not seeking any damages

from MilSpec AFFF contamination at all. This Court remanded the case to the Rock Island state court because, "[p]ermitting Defendant to remove this suit under the federal officer removal statute when the federal government contractor defense is irrelevant to the eventual resolution of the case and any PFAS it produced as a military contractor is explicitly excluded from this suit would defeat the purpose of the statute." *Raoul*, 693 F. Supp. 3d at 958.

3M appealed. The People again confirmed that they are not seeking any damages from MilSpec AFFF from the Rock Island Arsenal or elsewhere that may have commingled with PFAS contamination emanating from Cordova Facility. The Seventh Circuit affirmed this Court's remand order, holding that, "3M cannot present a colorable federal government contractor defense in line with *Baker* because the defense is wholly irrelevant under the State's theory of recovery." *Raoul*, 111 F.4th at 849. The language from the Seventh Circuit's ruling is important:

> 3M does not produce or use MilSpec AFFF at the Cordova Facility.
>
> * * *
>
> 3M argued that it planned to assert the federal government contractor defense because some of the allege PFAS contamination in the Mississippi River may have come from AFFF that 3M provided to the U.S. military and which was used or stored at the Rock Island Arsenal.
>
> * * *
>
> 3M's defense presumes that the PFAS contamination the State alleges could either have come from the Cordova Facility or from AFFF out of the U.S. Army's Rock Island Arsenal.
>
> * * *
>
> But the State clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed contamination – in other words, PFAS contamination arising from both the Cordova Facility and from AFFF from the Rock Island Arsenal. Further, the State expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources. Simply put, for the State to recover against 3M for PFAS contamination in a designated area, 100% of the contamination must be sourced from the Cordova Facility. If even a morsel of

contamination is not from PFAS produced at the Cordova Facility (such as AFFF out of the Rock Island Arsenal), the State's recovery is barred. Because of this concession, this case falls outside of the scope of *Baker*. **3M cannot present a colorable federal government contractor defense in line with Baker because the defense is wholly irrelevant under the State's theory of recovery. In this case, 3M is liable for PFAS contamination only in areas where the contamination is wholly derived from the Cordova Facility, and the government contractor defense does not apply to PFAS sourced from that facility.** Thus, 3M's attempt to remove the case under the federal officer removal statute fails under the fourth element.

*Id.* at 847-849 (emphasis added).

Once the case returned to the Rock Island Circuit Court, 3M moved to dismiss certain counts of the complaint. On March 21, 2025, the Rock Island Circuit Court (Judge McGehee) largely denied 3M's partial Motion to Dismiss. The People then filed an amended complaint that included the two dismissed counts (Counts V and X) for the purpose of preserving those claims on appeal. On July 28, 2025, Judge McGehee entered a Case Management Order ("CMO") establishing various deadlines for fact and expert discovery and dispositive motions and scheduling this action for a three-week trial from September 15 through October 6, 2026; Judge McGehee rearranged his docket to accommodate this trial setting. Even before Judge McGehee entered the CMO, the parties had started fact discovery. To date, the parties have served and responded to over 150 written discovery requests, including exchanging over a million pages of documents and beginning the process of collecting and producing electronically-stored information ("ESI") responsive to written discovery requests. The parties have also begun taking and scheduling fact depositions and have conducted an all-day site visit of 3M's Cordova Facility.

On September 24, 2025, the People timely served 3M with the People's Responses and Objections to Defendant 3M Company's First Set of Requests for Admission to Plaintiff ("Responses to RFAs"). The People specifically reaffirmed the concessions made to the Seventh Circuit and reaffirmed their theory of recovery. The People quoted the language from the Seventh

Circuit ruling throughout their responses.  The People outlined how they expected their experts would identify PFAS contamination wholly derived from the Cordova Facility and would not testify to damages if there was any commingling.  On October 23, 2025, 3M once again removed this case to the Central District of Illinois, making the same arguments for removal that this Court and the Seventh Circuit already rejected.

## **ARGUMENT**

### I.    **3M Bases its Removal on a Completely Inaccurate Interpretation of the People's Responses to RFAs.**

The People's Responses to RFAs do not provide any basis for 3M's removal.  To the contrary, the People's Responses to RFAs explicitly re-state and re-confirm what the People have said from the very beginning of the litigation – this case involves PFAS contamination from the Cordova Facility.  Again, the People re-stated and re-confirmed the concessions that they made to this Court and the Seventh Circuit and, specifically, that they are not seeking damages for any PFAS contamination from MilSpec AFFF from the Rock Island Arsenal, or any source, that has comingled with PFAS contamination from the Cordova Facility.

3M goes to great lengths to misrepresent the People's Responses to the RFAs.  Here is the entire portion of the People's Responses to RFAs germane to this point:

> The People agreed, at oral argument on 3M's appeal of Judge Darrow's decision remanding this case back to this Court, that they would not seek relief from 3M for mixed PFAS contamination – in other words, PFAS contamination arising from both the Cordova Facility and from MilSpec AFFF from the Rock Island Arsenal. The People also agreed that a factfinder will not need to apportion PFAS contamination caused by operations at the Cordova Facility and MilSpec AFFF contamination caused by MilSpec AFFF from the Rock Island Arsenal. The People intend to proceed in this litigation consistent with the representation made to the Seventh Circuit. The People anticipate that expert testimony will show (1) operations at the Cordova Facility have caused PFAS contamination, and (2) this PFAS contamination is separate from any MilSpec AFFF contamination from the Rock Island Arsenal. The People deny that there is any evidence that PFAS released from the Cordova Facility has mixed or commingled with MilSpec AFFF

> contamination from the Rock Island Arsenal such that the source of the contamination cannot be identified, and the People expect that this will be the subject of expert testimony at the conclusion of fact discovery.

Not. of Removal, Exhibit E, at 3-4. When read as a whole and with proper context, the People reaffirmed in their Responses to RFAs their theory of recovery and their prior representations to this Court and the Seventh Circuit. This entire portion of the People's Response to RFAs confirms that the People do not seek to recover any damages from MilSpec AFFF, including MilSpec AFFF that has comingled with PFAS from the Cordova Facility, that a factfinder will not need to apportion PFAS contamination caused by operations at the Cordova Facility and MilSpec AFFF, and that expert testimony will show that the PFAS contamination from the Cordova Facility for which the People seek to recover is separate from any MilSpec AFFF.

3M cobbles together bits and pieces of the People's responses to misleadingly represent that the People intend to seek recovery from MilSpec AFFF from other sources, specifically, the Savanna Army Depot. This is not true. The People referenced MilSpec AFFF from the Rock Island Arsenal in their Responses to RFAs because that was the only potential source of MilSpec AFFF that 3M raised in its initial notice of removal and the only potential source of MilSpec AFFF at issue previously before this Court and the Seventh Circuit. As this Court correctly noted, "Plaintiff has expressly disclaimed claims for PFAS contamination stemming from ***anywhere other than the Cordova Facility—including the Rock Island Arsenal***—and Defendant cannot be held liable for PFAS contamination from anywhere other than the Cordova Facility." *Raoul*, 693 F. Supp. 3d at 957 (emphasis added). In affirming this Court's previous remand order, the Seventh Circuit also explicitly noted that "the State clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed PFAS contamination—in other words, PFAS

contamination arising from both the Cordova Facility and from AFFF from the Rock Island Arsenal." *Raoul*, 111 F.4th at 849.

The People's Responses to RFAs change nothing. Had 3M asked the People to admit that they do not seek any recovery or relief of any kind in this Action for harm or damage from contamination from the Savanna Army Depot, the People would have resoundingly done so. In fact, 3M could have resolved any ambiguity by simply issuing a subsequent Request for Admission. To remove any doubt, the People do not seek relief from 3M for mixed PFAS contamination – in other words, PFAS contamination arising from both the Cordova Facility and from MilSpec AFFF, including any MilSpec AFFF from the Rock Island Arsenal or the Savanna Army Depot, and the People would admit as much in a subsequent Request for Admission.

3M's removal is inappropriate and must be rejected by the Court at its earliest opportunity because it is based on a fundamental misreading of the People's Responses to RFAs.[1]

## II. The Scope of the People's Complaint Remains Unchanged, and a Factfinder Will Not Need to Apportion Contamination.

Both this Court and the Seventh Circuit have already determined that the People's Complaint is not removable. For this case to be removable now, 3M would have had to receive "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). An "other paper" only provides a basis for removing a previously remanded case where the other paper "affirmatively and unambiguously reveals that the case is or has become removable" and "provides clear notice that the predicates for removal are present." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 821, 823 (7th Cir. 2013). A second removal under section 1446(b)(3) is improper "if nothing

---

[1] It defies common sense to suggest that the People would spend years fighting in this Court and the Seventh Circuit to get this case back to state court; start discovery; get a specially-set trial date; and then intentionally draft Responses to RFAs inconsistent with years of representations.

of significance changes between the first and second tries." *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 783 (7th Cir. 1999). 3M points only to the People's Responses to RFAs as such an "other paper," but as noted above, the People's Responses to RFAs do not constitute an "other paper" that affirmatively and unambiguously reveal that the case has become removable.

### A.    The People's Responses to RFAs do not provide grounds for removal.

In their amended complaint, the People maintain the exact same definition of PFAS that this Court and the Seventh Circuit have already considered, which excludes "any PFAS that have contaminated Illinois' environment or natural resources from aqueous film-forming foams ("AFFF") containing . . . PFAS compound[s]." Not. of Removal, Exhibit B, ECF No. 1-3 at ¶ 11. The People confirmed to the Seventh Circuit that the scope of this definition, and "the contamination for which it sought recovery did *not* include' contamination from 'aqueous film-forming foams ('AFFF') containing PFOA, PFOS, or any other PFAS compound.'" Brief of Plaintiff-Appellee at 4, *People ex rel. Raoul v. 3M Co.*, No. 23-3031 (7th Cir. Mar. 13, 2024) (citing the People's Complaint).

As discussed above, in their Responses to RFAs, the People once again re-confirmed that "they would not seek relief from 3M for mixed PFAS contamination – in other words, PFAS contamination arising from both the Cordova Facility and from MilSpec AFFF." Not. Of Removal, Exhibit E, at 3. In response to 3M's request that the People "[a]dmit that You do not seek any recovery or relief of any kind in this Action for harm or damage of any kind to any Landfill, Public Water System, Water Treatment Facility, Well, Resource at Issue, or the Mississippi River where there is PFAS derived from the use or Release of AFFF that has mixed with PFAS unrelated to the use or Release of AFFF," the People once again confirmed the scope of the definition of PFAS in the complaint and the People's representations to the Seventh Circuit:

> As outlined in the People's Complaint and as represented to the Seventh Circuit, the People admit that they intend to seek recovery and relief in this Action for harm and damage to Illinois' environment and natural resources at and around the Cordova Facility – including, without limitation, to the surrounding land, water and natural resources; any Landfill, Public Water System, Water Treatment Facility, Well, Resource at Issue, and/or the Mississippi River – caused by PFAS contamination from the Cordova Facility.

Not. of Removal, Exhibit E, at 7.

There is nothing different in this response, or any of the People's Responses to RFAs, that is different from the allegations in the People's Complaint and the People's representations to this Court and the Seventh Circuit. To remove any doubt, the People do not seek relief from 3M for mixed PFAS contamination – in other words, PFAS contamination arising from both the Cordova Facility and from MilSpec AFFF, including any MilSpec AFFF from the Rock Island Arsenal or the Savanna Army Depot. The scope of the People's claims has not changed since this Court issued its prior remand ruling. The People's Responses to RFAs do not constitute an "other paper" from which 3M may first ascertain that the case is one which has become removable. This Court should remand this matter a second time.

**B.    A factfinder still will not have to apportion any PFAS contamination between sources.**

In affirming this Court's September 21, 2023 Order remanding this case to the Rock Island Court, the Seventh Circuit noted that, "the State expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources." *Raoul*, 111 F.4th at 849. As noted above, the People confirmed in their Responses to RFAs that they "intend to proceed in this litigation consistent with the representation made to the Seventh Circuit Not. of Removal, Exhibit E, at 3. The People further explain in their Responses to RFAs the following.

> As outlined in the People's Complaint and as represented to the Seventh Circuit, the People admit that they intend to seek recovery and relief in this Action for harm and damage to Illinois' environment and natural resources at and around the

> Cordova Facility – including, without limitation, to the surrounding land, water and natural resources; any Landfill, Public Water System, Water Treatment Facility, Well, Resource at Issue, and/or the Mississippi River – caused by PFAS contamination from the Cordova Facility. The People admit that they are not seeking any recovery or relief in this Action for harm or damage of any kind derived from MilSpec AFFF contamination from the Rock Island Arsenal. Further responding, the People believe that expert testimony can identify PFAS contamination from the Cordova Facility. Further responding, the People respond that they believe that expert testimony can identify PFAS contamination caused by operations at the Cordova Facility and can identify PFAS that was produced, manufactured, used, or Released at or from the Cordova Facility. Further responding, even if other contamination is present, the People respond that they believe expert testimony can identify PFAS contamination caused by operations at the Cordova Facility and can identify PFAS that was produced, manufactured, used, or Released at or from the Cordova Facility.

Not. of Removal, Exhibit E, at 7-8. One of the People's experts, Jennifer Guelfo, verified the People's Responses to RFAs, including this statement.

The People's theory of the case has not changed. As the People represented to the Seventh Circuit and confirmed in their Responses to RFAs, a factfinder will not need to apportion any liability between sources.

3M has represented that it never produced or manufactured at the Cordova Facility any AFFF for use by the United States government pursuant to a federal specification or standard. MilSpec AFFF contamination could only come from a source other than the Cordova Facility. Whether any such MilSpec AFFF contamination has, in fact, comingled with PFAS contamination from the Cordova Facility remains a hypothetical. 3M has issued numerous subpoenas with the hope of finding such other source, but the only two potential sources they have yet to identify are the Rock Island Arsenal, which is 25 miles downriver from the Cordova Facility, and the Savanna Army Depot, which is approximately 30 miles upriver from the Cordova Facility. The People intend to rely on expert testimony to establish that there are certain areas at and surrounding the Cordova Facility that are contaminated by PFAS from the Cordova Facility and not from PFAS

from MilSpec AFFF such that a factfinder will not need to engage in any effort to apportion contamination from separate sources.

The People represented to this Court and to the Seventh Circuit that a factfinder will not have to apportion liability between sources, and the same holds true today. There is nothing new or different on this issue from when the Court rendered its prior ruling, and expeditious remand is still appropriate.

###    C.    3M cannot rely on the Savanna Army Depot report.

To the extent that 3M contends that its "[r]ecent investigation" concerning the Savanna Army Depot is an "other paper" that provides a basis for removal, that contention is disingenuous, untimely, and wrong. Not. of Removal, at 5. Under 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of [an] other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). First, as discussed above, the People have consistently excluded from this case any contamination from MilSpec AFFF, including any contamination from MilSpec AFFF that may have originated from the Savanna Army Depot (or the Rock Island Arsenal or any other source). Because the People do not seek any relief for any MilSpec AFFF that may have been released from the Savanna Army Depot, including any MilSpec AFFF that may have commingled with PFAS from the Cordova Facility, such contamination cannot provide 3M with a basis for removal under the federal officer removal statute as 3M will never have an occasion to raise the government contractor defense.

Second, to the extent 3M bases its removal on the discovery of potential MilSpec AFFF contamination from the Savanna Army Depot, its removal is untimely. 3M has known for several

years about the February 2021 U.S. Army Corps of Engineers Report upon which it relies to support its claims about the use of MilSpec AFFF at the Savanna Army Depot.  In fact, on April 26, 2023, 3M pointed to the use of MilSpec AFFF at the Savanna Army Depot as part of its basis for removing the People's separate action against 3M and other AFFF manufacturers for damages caused by AFFF contamination.  Notice of Removal, at ¶ 22, *People of the State of Illinois ex rel. Kwame Raoul v. 3M Co., et al.*, No. 1:23-cv-02620 (attached as Exhibit A) ("In addition to the military facilities expressly identified in the Complaint, numerous other current or former military facilities in Illinois are locations where MilSpec AFFF use is known or suspected to have caused PFAS releases to the environment. Those other facilities include . . . the former Savanna Army Depot on the Mississippi River in Carroll County, Illinois and Jo Davies County, Illinois.").  3M failed to file a notice of removal within thirty days after its receipt of the February 2021 U.S. Army Corps of Engineers Report, so to the extent that 3M contends that Report constitutes an "other paper," 3M's removal is untimely.

Further, as the People discuss above, the scope of their claims has not changed from when the Court rendered its prior ruling and remanded this case.  Remand is still appropriate because any possible MilSpec AFFF contamination identified in the February 2021 U.S. Army Corps of Engineers Report is not at issue in this case and not a basis for removal.

## III.    3M Still Cannot Meet the Federal Officer Removal Standard.

The scope of the People's complaint has not changed since this Court remanded this case the first time and since the Seventh Circuit affirmed this Court's order.  MilSpec AFFF will never be at issue in this case.  As this Court held, "[i]t is thus impossible for Defendant to be held liable for damages stemming from its actions under federal authority, and so the requisite connection or association is missing. Because the 'under color of federal authority' requirement has not been

met, federal jurisdiction is not proper." *Raoul*, 693 F. Supp. 3d at 958. The Seventh Circuit's affirmance further supports remand. Given the People's repeated confirmation that "this case falls outside of the scope of *Baker*. 3M cannot present a colorable federal government contractor defense in line with *Baker* because the defense is wholly irrelevant under the State's theory of recovery. In this case, 3M is liable for PFAS contamination only in areas where the contamination is wholly derived from the Cordova Facility, and the government contractor defense does not apply to PFAS sourced from that facility." *Raoul*, 111 F.4th at 849.

A.    **No new legal authority exists to provide 3M with federal jurisdiction.**

The additional legal authority that 3M now raises in its Notice of Removal fails to support removal. In the first case, *Maryland v. 3M Co.*, 130 F.4th 380 (4th Cir. 2025), the Fourth Circuit agreed with this Court and the Seventh Circuit that federal jurisdiction does not exist in the People's case. There, the Fourth Circuit reviewed two orders remanding Maryland's and South Carolina's cases seeking statewide damages from non-AFFF PFAS contamination and specifically distinguished those cases from the People's case after asking "the States whether they intended to make a similar concession as Illinois" has here. *Maryland*, 130 F.4th at 392. The states declined to do so. The Fourth Circuit ultimately stated that, "[i]f . . . a plaintiff concedes that those kinds of difficult questions are unnecessary for purposes of establishing liability, it may remain in state court." *Id.* The Fourth Circuit went on to state that,

> In *Raoul*, '100% of th[e] contamination must [have been] sourced from' the single, geographically limited facility for the state to recover. As a result, no state factfinder would need to 'apportion the PFAS contamination between sources.' But here, the States envision recovering for mixed PFAS contamination from numerous geographic locations. Even if they cannot ultimately recover for PFAS contamination from Military AFFF based on the scope of their complaints, a factfinder must, unlike in *Raoul*, still decide the important causation and allocation questions.

*Id.* The Fourth Circuit's opinion in *Maryland* only supports the People's motion to remand.[2]

3M also mentions the *City of Irondale v. 3M Co., et al.*, 2025 WL 2419238 (N.D. Ala. Aug. 19, 2025). Not only is that case from a district court in the Eleventh Circuit, but the district court's decision also fails to provide 3M the support it seeks. There, the court found that the City's disclaimer did not effectively foreclose the possibility that the City would seek to recover damages to its drinking water wells caused by MilSpec AFFF. *Irondale*, 2025 WL 2419238, at *7-8. As both this Court and the Seventh Circuit have already held, the People's disclaimer in this matter effectively forecloses the potential for the People to recover damages from MilSpec AFFF.

3M also cites *Puerto Rico v. Express Scripts*, 119 F.4th 174 (1st Cir. 2024), but the First Circuit's decision in that case offers no support to 3M's removal efforts here. There, the Commonwealth of Puerto Rico alleged the defendants engaged in unfair and deceptive business practices while negotiating prices with drug manufacturers on behalf of health insurance plans. *Express Scripts*, 119 F.4th at 181. One defendant's notice of removal alleged that it negotiated simultaneously on behalf of both government-run health plans for federal employees and private health plans; it did not separately negotiate any of the government-run health plans. *Id.* at 191. Those negotiations "allegedly [could not] be disassembled," meaning that holding the defendant liable for any part of them would have "necessarily included holding [it] liable for its negotiations" conducted on behalf of the federal government, "no matter what the disclaimer [said]." *Id.* at 190–91. As the negotiations were "[c]entral to the Commonwealth's claims," the First Circuit held that "crediting the disclaimer would foreclose [the defendant's] right to have a federal court evaluate its 'colorable' preemption defense" arising from its federal duties. *Id.* at 181, 191.

---

[2] Maryland and South Carolina filed a petition for a writ of certiorari to the Supreme Court on October 24, 2025. As noted, however, the Fourth Circuit's opinion provides no support for federal jurisdiction in this matter. Pet. for Writ of Cert., *State of Maryland, et al. v. 3M Co., et al.*, No. 25-102 (Oct. 24, 2025).

By contrast, here, the charged conduct – the acts for which the People have sued 3M – are 3M's discharge, emission, and disposal of PFAS contamination from its Cordova Facility.  As the People have confirmed several times throughout this litigation, they do not seek to recover for damages caused by MilSpec AFFF.  The People are not deciding what defenses 3M may present. The People only note, as this Court has already held, that 3M will ***never*** have an occasion to present the federal government contractor defense.

Finally, 3M cites to a case management order in the AFFF MDL, but that, too, fails to provide any support.  Case Management Order No. 36, In re: Aqueous Film-Forming Foams Prod. Liab. Litig., No. 2:18-mn-02873-RMG, ECF No. 7891 (D.S.C. Aug. 22, 2025).  CMO No. 36 concerns only the application of the *Maryland* decision to personal injury claims where the injured plaintiffs had been exposed to both MilSpec AFFF and PFAS from non-AFFF sources.  This case does not involve any personal injury claims.  Moreover, as discussed above, the Fourth Circuit supported this Court and the Seventh Circuit's remand of this case and specifically distinguished their decision from the instant matter.

> **B.      3M still cannot claim that they discharged copious amounts of PFAS at and from the Cordova Facility under color of federal office.**

As discussed above, 3M does not raise any new and relevant factual basis for its removal. Much of 3M's legal argument in its Notice of Removal is repetitive, and even verbatim, of its previous notice of removal.  The sole conduct for which the State seeks to hold 3M liable is 3M's improper industrial discharge and disposal of PFAS at and from its Cordova Facility.  3M did not perform those actions in any way "under color of federal office."   3M cannot satisfy this requirement because there is absolutely no "connection or association" between 3M's "charged conduct" and its claimed federal authority.  *Baker v. Atl. Richfield Co.*, 962 F.3d 937 at 943–44 (7th Cir. 2020).

**C.    3M still does not have a colorable claim that the government contractor defense applies to the Complaint in this action.**

As the People have expressed on several occasions throughout this litigation, the People do not seek to recover any damages from MilSpec AFFF, including MilSpec AFFF that has comingled with PFAS from the Cordova Facility, a factfinder will not need to apportion PFAS contamination caused by operations at the Cordova Facility and MilSpec AFFF, and expert testimony will show that the PFAS contamination from the Cordova Facility for which the People seek to recover is separate from any MilSpec AFFF.  The People's Responses to RFAs change nothing.  The People have not retreated from or narrowed the representations they made to the Seventh Circuit.  Based on the People's consistent position, the Seventh Circuit held that, "this case falls outside of the scope of *Baker*.  3M cannot present a colorable federal government contractor defense in line with *Baker* because the defense is wholly irrelevant under the State's theory of recovery." *Raoul*, 111 F.4th at 849.  Like the Seventh Circuit held in affirming this Court's previous remand order, this Court should now find that "3M's attempt to remove the case under the federal officer removal statute fails under the fourth element." *Id.*

**IV.    Expedited Ruling is Necessary to Protect the People's Right to Proceed in State Court.**

The People respectfully request that the Court rule on this motion at its earliest opportunity.  As noted above, the parties are in the middle of fact discovery in Rock Island Circuit Court, and Judge McGehee has specially scheduled a three-week trial in September of 2026.  3M's removal is inappropriate and is an obvious ploy to delay fact discovery and the trial date.  The sooner the Court remands the case back to Rock Island Circuit Court, the more likely that the September 2026 trial date can be preserved.

Expedited consideration is also warranted because 3M, in addition to improperly removing this action, has also filed a Notice of Potential Tag-Along Action before the Judicial Panel on Multidistrict Litigation ("JPML") and is seeking to have the JPML transfer this case to the AFFF MDL before this Court rules on the People's Motion to Remand. The JPML issued a Conditional Transfer Order transferring the case to the AFFF MDL on October 27, 2025. The People filed a notice of opposition to the Conditional Transfer Order, and the parties will engage in briefing on the People's Motion to Vacate the Conditional Transfer Order over the next several weeks. The JPML has not yet scheduled its first hearing in 2026, but the People anticipate the JPML will likely rule on the People's case in late January 2026.

3M seeks to stall the People's case and avoid the September 2026 trial date specially set by the Rock Island Court. Because failure to presently decide the State's remand motion may have lasting implications if this case is transferred to the AFFF MDL, delaying the Rock Island Court's Case Management Order and trial date for years, the People respectfully request that this Court issue an expedited ruling on their motion to remand.

## V.    Attorneys' Fees Are Appropriate Under the Circumstances of Defendant's Removal.

Section 1447(c) allows a court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The statute is meant to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Cap. Corp*., 546 U.S. 132, 140 (2005); *see also Maine v. BP P.L.C.*, 2025 WL 2753978, at *6-7 (D. Maine Sep. 29, 2025). Such an award is committed to the discretion of the district court and does not depend on any finding that the removal was in bad faith. *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321, 323-24 (10th Cir. 1994); *see also Kuperstein v. Hoffman-Laroche, Inc*., 457 F. Supp. 2d 467, 472 (S.D.N.Y. 2006) (holding court

may award costs and fees without "a finding of bad faith or frivolity"). "Multiple removals could encounter problems—could even lead to sanctions—if nothing of significance changes between the first and second tries." *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 783 (7th Cir. 1999) (cleaned up).

The Court should award the People all costs and fees incurred to bring this motion because Defendant's removal is objectively unreasonable and because unusual circumstances justify an award. *Martin*, 546 U.S. at 141. 3M has no objectively reasonable basis for removing the People's Complaint. This Court and the Seventh Circuit both have held that the People's case properly belongs in state court. There was no information in the People's Responses to RFAs that would support removal. 3M's removal is a desperate attempt to avoid fact discovery and a trial in Rock Island Circuit Court. Because 3M has no reasonable basis for removing this matter, and the removal was done to delay the state court's case management order and September 2026 trial date, the People should be awarded attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, this Court should remand this action back to the Circuit Court for the 14th Judicial Circuit in Rock Island County, Illinois, and award the State of Illinois its reasonable attorneys' fees and costs incurred as a result of this removal.

Dated: November 6, 2025

PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* KWAME RAOUL, Attorney General of the State of Illinois

MATTHEW J. DUNN, Chief Environmental Enforcement/Asbestos Litigation Division

By:     /s/*Daniel R. Flynn*
        Daniel R. Flynn
        One of their attorneys

Stephen J. Sylvester
Ellen F. O'Laughlin
Karen Howard
**Office of the Illinois Attorney General**
Environmental Bureau
69 West Washington Street, Suite 1800
Chicago, Illinois  60602
(312) 814-2550
stephen.sylvester@ilag.gov
ellen.olaughlin@ilag.gov
karen.howard@ilag.gov

Adam J. Levitt
Daniel Rock Flynn
Amy E. Keller
Diandra "Fu" Debrosse
Anna Claire Skinner
Special Assistant Attorneys General
**DiCello Levitt LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
(312) 214-7900
alevitt@dicellolevitt.com
dflynn@dicellolevitt.com
akeller@dicellolevitt.com
fu@dicellolevitt.com
askinner@dicellolevitt.com

Joseph M. Callow, Jr.
Gregory M. Utter
Special Assistant Attorneys General
**Callow + Utter Law Group**
8044 Montgomery Road, Suite 170
Cincinnati Ohio  45236
(513) 930-0741
jcallow@callowandutter.com
gmutter@callowandutter.com

Richard W. Fields*
Martin Cunniff*
Special Assistant Attorneys General
**Fields, Han & Cunniff LLC**
1700 K Street NW, Suite 810
Washington, DC  20006
(833) 382-9816
fields@fhcfirm.com

martin.cunniff@fhcfirm.com

*Motions for admission to be filed.

## CERTIFICATE OF COMPLIANCE

I, the undersigned, certify the foregoing Brief in Support of Plaintiff's Motion for Remand complies with this Court's type volume limitations set forth in Local Rule 7.1(B)(4). The foregoing Plaintiff's Memorandum in Support of Their Motion for Remand is 6,186 words including all headings, footnotes, quotations, and signature blocks.

Dated: November 6, 2025

s/ *Daniel R. Flynn*
Daniel R. Flynn
One of Plaintiff's Attorneys