E-FILED

Thursday, 20 November, 2025  05:10:15 PM

Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

|  |  |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* KWAME RAOUL, Attorney General of the State of Illinois,<br><br>          Plaintiff,<br><br>   v.<br><br>3M COMPANY,<br><br>          Defendant. | Civil Action No. 25-cv-4189<br><br>JURY TRIAL DEMANDED |

## DEFENDANT 3M COMPANY'S OPPOSITION TO
## <u>PLAINTIFF PEOPLE OF THE STATE OF ILLINOIS' MOTION TO REMAND</u>

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

I.     PFAS And MilSpec AFFF At Savanna Army Depot And Rock Island Arsenal ............................................................................. 3

II.    The AFFF Multidistrict Litigation ................................................. 4

III.   The State's Suit And 3M's Prior Removal ..................................... 4

IV.   The Prior Seventh Circuit Appeal ................................................ 5

V.     Post-Remand Developments .......................................................... 7

     A.     The State's Recent Discovery Responses ............................... 7

     B.     3M's Investigation Of The Savanna Army Depot ................. 8

     C.     3M's Renewed Removal ......................................................... 9

ARGUMENT ........................................................................................................... 9

I.     3M Plausibly Alleges All Of The Elements Of Federal-Officer Removal ........................................................................................... 9

     A.     3M Plausibly Alleges A Connection Between The State's Claims And 3M's Actions Under Color Of Federal Authority ............................................................................... 10

     B.     The Seventh Circuit's Reasoning And The State's Retraction Of Its Prior Concessions Strongly Support Removal ................................................................................. 13

II.    The State's Contrary Arguments Lack Merit .............................. 17

     A.     The State's Discovery Responses Contradict Its Concessions On Appeal ..................................................... 17

     B.     The State's Hypothetical New Disclaimer As To Savanna Has No Effect ..................................................................... 19

     C.     The State's Timeliness Objections Are Meritless ............... 20

CONCLUSION ...................................................................................................... 22

CERTIFICATE OF COMPLIANCE ..................................................................... 1

i

CERTIFICATE OF SERVICE ................................................................................................ 2

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re Aqueous Film Forming Foams Prods. Liab. Litig.*,
    2022 WL 4291357 (D.S.C. Sept. 16, 2022)........................................................................10

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    357 F. Supp. 3d 1391 (J.P.M.L. 2018)....................................................................................4

*Baker v. Atlantic Richfield Co.*,
    962 F.3d 937 (7th Cir. 2020) ......................................................6, 10, 12, 13, 14, 16

*Betzner v. Boeing Co.*,
    910 F.3d 1010 (7th Cir. 2018) ...............................................................................10

*City of Irondale v. 3M Co.*,
    2025 WL 2419238 (N.D. Ala. Aug. 19, 2025) ...........................................12, 13

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999).................................................................................................16

*Maine v. 3M Co.*,
    -- F.4th --, 2025 WL 3228256 (1st Cir. Nov. 19, 2025) ............3, 11, 12, 13, 16, 20

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) ......................................................10, 12, 13, 16, 20

*Nessel v. Chemguard, Inc.*,
    2021 WL 744683 (W.D. Mich. Jan. 6, 2021) .......................................................12

*Illinois ex rel. Raoul v. 3M Co.*,
    111 F.4th 846 (7th Cir. 2024) ...................................1, 2, 5, 6, 7, 10, 13, 14, 15, 16, 17, 18, 20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................................12

*Walker v. Trailer Transit, Inc.*,
    727 F.3d 819 (7th Cir. 2013) .............................................................................21, 22

### Statutes

28 U.S.C. § 1442(a) .............................................................................................9, 10

28 U.S.C. § 1446(b)....................................................................................................21

## INTRODUCTION

The State of Illinois's recent abandonment of its broad concessions on appeal—which were the sole basis for the Seventh Circuit's prior remand—make clear that this case belongs in *federal* court because 3M has a *federal* defense.

The State seeks to hold 3M liable for alleged PFAS contamination at and around 3M's facility in Cordova, Illinois, including in the Mississippi River. 3M has argued from the outset that PFAS from aqueous film-forming foam (AFFF) produced by 3M pursuant to military specifications (MilSpec) are plausibly present in the natural resources for which the State seeks relief. Those facts give rise to a federal government-contractor defense that 3M is entitled to litigate in federal court. The State originally attempted to frustrate 3M's right to a federal forum by disclaiming relief for AFFF contamination in its complaint. But the Seventh Circuit rejected that effort. *Illinois ex rel. Raoul v. 3M Co.*, 111 F.4th 846, 848 (7th Cir. 2024). The court of appeals remanded to state court only because the State conceded on appeal that it would confine its suit to areas where "100% of th[e] contamination" is *exclusively* "from the Cordova Facility." *Id.* at 849. "If even a morsel of contamination is not from PFAS produced at the Cordova Facility … the State's recovery is barred." *Id.* at 849.

The State has now abandoned that admission, confirming once and for all that this case unavoidably implicates 3M's federal government-contractor defense. The State previously assured the Seventh Circuit that, "[i]f it's not from Cordova, then the State will not recover." Dkt. 1-2 at 16:13-19 (CA7 Tr.). The State thus said—and the court of appeals held—that there would be no "need to apportion the PFAS contamination between sources." 111 F.4th at 849. But the State has walked back those concessions, in two key respects. First, the State's recent discovery responses disclose that its claims exclude only MilSpec AFFF contamination from the Rock Island Arsenal, and not from other potential sources. Dkt. 1-6 at 5-6 (RFA Responses). Second, the State

now admits that it seeks relief "even if *other* contamination" not from Cordova "is present." *Id.* at 7 (emphasis added). That is important because, as the State is aware, 3M has identified another nearby source of MilSpec AFFF—the Savanna Army Depot—upstream of the Cordova Facility. And 3M has plausibly alleged that PFAS from Savanna have plausibly commingled in natural resources for which the State seeks recovery. The State concedes that determining whether (and to what extent) particular contamination derives from Cordova or another source will require expert testimony, *id.* at 8, contrary to the Seventh Circuit's belief that no apportionment would be required.

The State's abrupt change in position eliminates the sole basis for the Seventh Circuit's affirmance and compels denial of the State's remand motion. Its discovery responses confirm that its suit clearly is *not* confined to PFAS from the Cordova Facility, and it plausibly *does* sweep in MilSpec AFFF. The removal question now presented to this Court is the question the court of appeals already answered in 3M's favor: whether the State can deprive 3M of a federal forum *without* "clearly and unequivocally conced[ing]" that it can recover "only in areas where the contamination is wholly derived from the Cordova Facility." *Raoul*, 111 F.4th at 849.

The State's rejoinders are makeweights. It halfheartedly tries to reconcile its discovery responses with its prior concessions, but the contradictions are clear. The State suggests that it could also disclaim the additional source of MilSpec AFFF that 3M has identified but refuses to disclaim relief for commingled PFAS. The State's further rewriting of its claims should not be credited; in any event it amounts, at most, to the same kind of disclaimer the Seventh Circuit has already held insufficient. Just yesterday the First Circuit agreed, holding that where "[r]esolution" of a State's claim requires deciding "whether and to what extent … contamination from AFFF sources has commingled with non-AFFF" contamination, the case belongs in federal court—

2

regardless of any disclaimer. *Maine v. 3M Co.*, -- F.4th --, 2025 WL 3228256, at *7 (1st Cir. Nov. 19, 2025). Finally, the State's contention that 3M's removal and reliance on the Savanna Army Depot are untimely distorts the statutory timeline.

The State's motion to remand should be denied.

## BACKGROUND

### I.    PFAS And MilSpec AFFF At Savanna Army Depot And Rock Island Arsenal

PFAS are key components of AFFF, a firefighting foam used by the U.S. military in settings where fires are "inevitable and potentially devastating." Dkt. 1 ¶ 45 (NOR). 3M produced AFFF pursuant to detailed military specifications and sold it to the federal government for decades. *Id.* ¶ 48. The military has used 3M's MilSpec AFFF across the country, including at the Savanna Army Depot and the Rock Island Arsenal, both in Illinois on the banks of the Mississippi. *Id.* ¶¶ 2, 48.

The U.S. Army Corps of Engineers investigated PFAS at the Savanna Army Depot and prepared a site-inspection report. NOR ¶ 56. That report detailed the use of AFFF products during firefighting training activities. *Id.* ¶ 58. It explained that contaminants released into the soil migrated to groundwater, which flowed towards the Mississippi River. *Id.* Similarly, the Army conducted an inspection of the Rock Island Arsenal and prepared a report, identifying AFFF use and storage at numerous locations. *Id.* ¶ 65. That report also describes evidence that "firefighting foam operations [were] conducted in the Mississippi River." *Id.* ¶ 66.

A 3M facility in Cordova sits on the banks of the Mississippi, midway between the Savanna Army Depot (30 miles upstream) and the Rock Island Arsenal (25 miles downstream). NOR ¶ 2. AFFF was used at the Cordova Facility since 1969, and historically, wastewater containing AFFF was released at the facility. *See* Transfer Order at 1-2, *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, Dkt. 3420 (J.P.M.L. Apr. 3, 2025).

3

## II.     The AFFF Multidistrict Litigation

Over the past years, States, public water providers, and private plaintiffs have brought various suits against AFFF manufacturers, alleging that "AFFF products used at airports, military bases, or certain industrial locations caused the release of" PFAS "into local groundwater and contaminated drinking water."  *In re Aqueous Film-Forming Foams Prods. Liab. Litig.,* 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).  The Judicial Panel on Multidistrict Litigation (JPML) centralized these actions into the AFFF multidistrict litigation (AFFF MDL).  *Id.* at 1396.  The JPML concluded that such consolidation of AFFF suits would "promote the just and efficient conduct of this litigation."  *Id.* at 1394.  As the JPML explained, that is partially because "AFFF manufacturers likely will assert identical government contractor defenses in many of the actions."  *Id.*

## III.     The State's Suit And 3M's Prior Removal

The State filed this suit on March 16, 2022, in Illinois state court.  NOR ¶ 14.  The State alleges that 3M manufactured and discharged PFAS from the Cordova Facility, including into the Mississippi River, Compl. ¶¶ 105, 107-08, 129-36, and that PFAS have migrated into the environment from the Cordova Facility, *id.* ¶¶ 143, 178, causing contamination of the State's surface waters, groundwater, wetlands, and wildlife, *id.* ¶¶ 145-80.

Although the State's suit is premised on 3M's alleged activities at the Cordova Facility, it seeks damages for *all* alleged "PFAS" contamination "*at and around*" the Cordova Facility, including any downstream harm.  *E.g.*, Compl. ¶¶ 248, 259 (emphasis added); *id.* at 55, 57.  This definition necessarily includes PFAS contamination in the Mississippi.  The complaint defines "PFAS" as non-AFFF PFAS, purportedly disclaiming recovery for "any PFAS that have contaminated Illinois' environment or natural resources from aqueous film-forming foams ('AFFF') containing PFOA, PFOS, or any other PFAS compound."  *Id.* ¶ 11.

3M removed the suit on April 21, 2022, asserting federal-officer jurisdiction because the

4

alleged contamination for which the State seeks recovery encompasses PFAS stemming from Mil-Spec AFFF used at the Rock Island Arsenal.  *See* 22-cv-4075, Dkt. 1 ¶¶ 24-33 (2022 Notice of Removal).  The State moved to remand, arguing that its suit did not implicate 3M's government-contractor defense because it disclaimed relief for AFFF and limited its claims to alleged harm from the Cordova Facility.  *See* 22-cv-4075, Dkt. 4 at 2 (2022 Motion to Remand).

This Court granted the State's motion to remand.  22-cv-4075, Dkt. 23 at 1 (2023 Remand Order).  The Court determined that 3M satisfied three of the four elements of the federal-officer removal statute:  It agreed that 3M is a person that acted under the United States in manufacturing MilSpec AFFF and that 3M's federal government-contractor defense is colorable.  *Id.* at 5-8.  But the Court concluded that 3M's defense did not "relate to the claims brought in the suit" because the State disclaimed recovery for PFAS stemming from any source other than Cordova.  *Id.* at 8.

## IV.    The Prior Seventh Circuit Appeal

3M appealed, and the Seventh Circuit affirmed, but on a different basis from the district court.  *Raoul*, 111 F.4th at 848-49.  The court of appeals made clear that the State's disclaimer in its complaint was *not* sufficient to preclude removal.  *Id.*  It explained that, "[i]f the contamination came from AFFF, then the government contractor defense could apply … even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF."  *Id.* at 848.  That is because, "[f]or instance, if a designated area of the Mississippi River is contaminated with PFAS from both the Cordova Facility and from AFFF, then a factfinder would need to apportion the contamination between that stemming from the Cordova Facility (which would not be subject to the government contractor defense) and that sourced from AFFF (which would potentially be subject to the defense)."  *Id.*  The State's disclaimer therefore did not negate federal-officer removal.

Instead, the Seventh Circuit affirmed based solely on "the State's concessions on appeal,"

which went markedly beyond the complaint's disclaimer. *Raoul*, 111 F.4th at 848. At oral argument, the panel had pressed the State on whether its disclaimer was enough to distinguish *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020). In *Baker*, the Seventh Circuit held that such a disclaimer does not defeat federal jurisdiction in cases involving allegations of mixed contamination. *Id.* at 945 & n.3.

Seeking to get around *Baker*, the State conceded at oral argument that it would recover in this case only where PFAS were derived solely from the Cordova Facility, so a factfinder would not need to apportion PFAS from different sources. *Raoul*, 111 F.4th at 849. The State admitted that it had to "prove that 100 percent of the contamination came from Cordova" and, for any given location, the State "would not recover" at all unless it could prove "that all of the contamination came from Cordova." CA7 Tr. 12:24-14:1. That was, as one panel member observed, a "big concession." *Id.* at 14:2-3. The State doubled down: "[T]his argument is the same whether … the something else that is 'not Cordova' that caused any given contamination … is MilSpec AFFF, whether 3M made it, or whether it's a completely different chemical. … If it's not from Cordova, then the State will not recover." *Id.* at 16:13-19. Because the State "loses" for any locations where "the toxins are commingled," it eliminated the need for any "apportionment whatsoever" and made *Baker* "totally irrelevant because there is no apportionment necessary in this case, period." *Id.* at 11:5-12, 14:15-18.

Crediting the State's "clea[r] and unequivoca[l]" concessions, the Seventh Circuit held remand appropriate. *Raoul*, 111 F.4th at 849. The court stressed that the State had explicitly limited the scope of its claims to only those areas where "100% of [the] contamination" was "sourced from the Cordova Facility"—that is, where "the contamination is wholly derived from the Cordova Facility." *Id.* "If even a *morsel* of contamination is not from PFAS produced at the Cordova

Facility," the court observed, "the State's recovery is barred." *Id.* (emphasis added). "Because of this concession," the court held, "this case falls outside of the scope" of *Baker*. *Id.*

## V.    Post-Remand Developments

### A.    The State's Recent Discovery Responses

Following remand, discovery began in state court. In August 2025, 3M propounded requests for admission (RFAs), and the State served verified responses on September 24. NOR ¶ 26; RFA Responses. In its responses, the State walked back its concessions that were central to the Seventh Circuit's decision:

- 3M asked the State to admit that it "d[id] not seek any recovery … for harm … where any PFAS, even a morsel, derived from AFFF use or Release is present," and specifically for "harm or damage of any kind … where there is any PFAS that was not produced, manufactured, used, or Released at or from the Cordova Facility." RFA Responses 5-6. The State responded that it "admit[s] *only* that they are not seeking any recovery or relief in this Action for harm or damage derived from mil-spec AFFF contamination *from the Rock Island Arsenal*." *Id.* at 5 (emphases added); *see id.* at 6. The State otherwise denied the requests for admission, leaving open the possibility that it would recover for PFAS from sources other than Cordova.

- 3M asked the State to admit that PFAS "can commingle or mix in environmental media." RFA Responses 4. The State admitted "it is possible that there is a potential for one or more PFAS to be present at measurable amounts with one or more other PFAS in a media." *Id.* at 5. But the State further admitted that it "anticipate[s] that expert testimony will identify PFAS contamination caused by operations at the Cordova Facility … and that the PFAS contamination at issue in this Action can be identified and traced back to the Cordova Facility, *even if there are other contaminants in the same media*." *Id.* (emphasis added).

- 3M asked the State to admit that the State did not "seek any recovery … for harm … where there is PFAS derived from the use or Release of AFFF that has mixed with PFAS unrelated to the use or Release of AFFF."  RFA Responses 7.  The State responded that it is "not seeking any recovery" for harm "from mil-spec AFFF contamination *from Rock Island Arsenal*."  *Id.* (emphasis added).  And the State asserted that it "believe[s] that expert testimony can identify PFAS contamination caused by operations at the Cordova Facility … *even if other contamination is present*."  *Id.* (emphasis added).  The State otherwise denied that it would not seek to recover for mixed AFFF and non-AFFF PFAS.  *Id.*

- 3M asked the State to admit that it was "unable to show that 100% of the PFAS detected at or around the Cordova Facility is derived from non-AFFF PFAS or PFAS-containing products … Released at or from the Cordova Facility."  RFA Responses 9.  The State argued in response that 3M's request is not "consistent with [the State's] legal obligations to establish liability on the claims asserted in the People's Complaint."  *Id.*

The State's discovery responses contradict its concessions on appeal.  Its responses reveal that it *does* seek to recover where "other contamination" not from Cordova "is present" and that determining whether particular contamination derives from Cordova or another source will require expert testimony and thus apportionment by a factfinder.

### B.    3M's Investigation Of The Savanna Army Depot

Meanwhile, investigation by 3M has identified at least one additional nearby site at which MilSpec AFFF was used:  the Savanna Army Depot, 30 miles upriver from the Cordova Facility.  NOR ¶¶ 11, 32, 55-62.  Based on that upstream release of MilSpec AFFF into the Mississippi River, 3M has alleged that PFAS from the use of MilSpec AFFF are plausibly present in at least the portions of the Mississippi for which the State seeks recovery in this case.  *Id.* ¶¶ 32, 54-70.

### C.    3M's Renewed Removal

Because the State abandoned those linchpin concessions, on October 23, 3M removed this case again.  3M's renewed notice of removal alleges that the State seeks relief against 3M for mixed PFAS contamination—including in the Mississippi, where MilSpec AFFF from the Savanna Army Depot or elsewhere plausibly commingled.  NOR ¶ 12.  As the notice of removal explains, the State's discovery responses contradict its concessions to the Seventh Circuit that it seeks relief only if and to the extent contamination comes exclusively from the Cordova Facility. *Id.* ¶¶ 49-53.  The State's revised position disclaims only recovery for PFAS contamination stemming from the Rock Island Arsenal, and thus does not exclude recovery where PFAS stem from other sources—including MilSpec AFFF from the Savanna Army Depot.  As such, apportionment of PFAS between sources will be necessary, and this case belongs in federal court under the Seventh Circuit's prior reasoning.

3M designated this case for transfer to the AFFF MDL.  On October 27, 2025, the JPML issued a Conditional Transfer Order for the transfer of this case to the MDL.  *In re Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, MDL No. 2873, Dkt. 3962 (J.P.M.L. Oct. 27, 2025).  The State has filed a motion to vacate that order, which the JPML will likely consider in January 2026, with a ruling on transfer expected shortly thereafter.  Meanwhile, the State has again moved to remand.  Dkt. 15-1 (Mot.).  3M filed a motion to stay proceedings pending the JPML's transfer decision.

### ARGUMENT

### I.    3M Plausibly Alleges All Of The Elements Of Federal-Officer Removal

3M has plausibly alleged every element required for removal under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1).  A defendant invoking that provision must plausibly allege that (1) it is a "person" that (2) "act[ed] under [a federal] officer"; (3) the case is "for or relating

to" its actions taken "under color of" federal authority; and (4) the defendant has a colorable federal defense for that action. *Id.*; *see Raoul*, 111 F.4th at 848. 3M's notice of removal checks every box. It is undisputed that 3M is a "person," *Baker*, 962 F.3d at 941; that it "act[ed] under" federal authority in producing MilSpec AFFF, *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018); and that 3M's production of MilSpec AFFF implicates the government-contractor defense, *In re Aqueous Film Forming Foams Prods. Liab. Litig.*, 2022 WL 4291357, at *12, *15 (D.S.C. Sept. 16, 2022). The only dispute is whether the State's claims, as currently asserted, implicate 3M's government-contractor defense. They do. Although this Court and the Seventh Circuit concluded otherwise before, the Seventh Circuit did so in reliance on the State's concessions, which it has now abandoned. Given that the State has now reverted to the position the Seventh Circuit previously rejected, the court of appeals' reasoning confirms that 3M's defense applies.

### A.     3M Plausibly Alleges A Connection Between The State's Claims And 3M's Actions Under Color Of Federal Authority

The federal-officer-removal statute sets a low bar. The statute authorizes any officer of the United States, "or any person acting under that officer," to remove a civil action that is "for *or relating to* any act under color of such office." 28 U.S.C. § 1442(a)(1) (emphasis added). That language requires "'only *a connection or association* between the act in question and the federal office.'" *Baker*, 962 F.3d at 944. 3M thus need only plausibly allege a connection between the actions that give rise to its defense—here, 3M's production of MilSpec AFFF for the U.S. military—and the State's claims. As the Seventh Circuit explained in this case, 3M satisfies the nexus element if the "factfinder would need to apportion the contamination between that stemming from the Cordova Facility" and "that sourced from AFFF." *Raoul*, 111 F.4th at 848. Other circuits have held the same thing in similar cases. *Maryland v. 3M Co.*, 130 F.4th 380, 391 (4th Cir. 2025) ("[A] company like 3M satisfies the nexus element for removal if the factfinder will need to

identify the sources of pollutants," at least some of which were "manufactur[ed] … for the federal government."); *Maine*, 2025 WL 3228256, at *7 (3M satisfied "nexus" where factfinder must determine "whether and to what extent [alleged] contamination from AFFF sources has commingled with non-AFFF").

3M's plausible allegations easily clear this low bar.  The State alleges that Illinois's natural resources are contaminated with PFAS stemming from the Cordova Facility.  Compl. ¶ 11.  Its complaint seeks relief for any "PFAS" contamination "*at and around*" the Cordova Facility, including in the Mississippi.  *E.g.*, *id.* ¶¶ 190-91, 248, 259 (emphasis added).  3M plausibly alleges that the asserted contamination for which the State seeks recovery stems at least in part from MilSpec AFFF sources.  Specifically, 3M alleges that MilSpec AFFF has been used, stored, and released at military facilities and elsewhere in Illinois, including at the Rock Island Arsenal and the Savanna Army Depot.  NOR ¶¶ 54-70.  It plausibly alleges that PFAS from MilSpec AFFF from those locations have commingled with the same PFAS compounds from the Cordova Facility in the areas of the Mississippi for which the State seeks recovery.  *Id.* ¶¶ 2,11, 54-70.  And 3M has further plausibly alleged that those particular PFAS compounds from both MilSpec AFFF and non-AFFF sources are chemically indistinguishable from each other in the environment, meaning there is no ready way to tell what PFAS came from which source.  *Id.* ¶¶ 10-13, 77.  Because the State has no reliable way to determine whether PFAS came from a MilSpec AFFF or a non-AFFF source, a factfinder could not hold 3M liable for *only* non-AFFF PFAS contamination.

That is all 3M must allege to establish the connection § 1442 requires between its actions taken under a federal officer and the State's claims.  Courts are clear that § 1442's nexus requirement is met where the defendant plausibly alleges that the source of contaminants that might have been produced for the federal government cannot readily be ascertained—including, in particular,

claims based on AFFF. *See Maryland*, 130 F.4th at 391 (nexus element satisfied where 3M "plausibly alleged that the PFAS intermingled to the point that it is impossible to identify their source," such that MilSpec AFFF "contributed to at least" part of the contamination); *see also City of Irondale v. 3M Co.*, 2025 WL 2419238, at *6 (N.D. Ala. Aug. 19, 2025); *Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021); *cf. Baker,* 962 F.3d at 945 n. 3. As in *Maine*, given 3M's plausible allegations here, the factfinder will be required "to determine whether the source of any PFAS contamination … can be attributed to AFFF." 2025 WL 3228256, at *7. The nexus is therefore satisfied.

That conclusion is confirmed by the fact that any relief "would necessarily implicate work that 3M did for the federal government"—for which 3M has a federal defense—meaning that "3M's federal work is inextricably related to the charged conduct." *Maryland*, 130 F.4th at 390-91. That is self-evidently true with respect to the State's request for injunctive relief "requiring 3M to take action to prevent ongoing contamination and to remediate the areas contaminated and restore resources injured or impacted by PFAS released from the Cordova Facility." Compl. ¶ 173. If PFAS from MilSpec AFFF and non-AFFF sources cannot be distinguished, it is impossible for 3M to abate *only* PFAS contamination resulting from non-AFFF products. *See Irondale*, 2025 WL 2419238, at *8; *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011) (noting "'the indivisible nature of the injunctive … remedy'"). Even as to damages, the State must at minimum present expert testimony to support "apportion[ing] … PFAS contamination … from [MilSpec] AFFF compared to non-AFFF products." *Maryland*, 130 F.4th at 391. 3M has a right to a federal forum to contest such evidence—whether through "'cross-examination during [the state's] case in chief or through the introduction of evidence during the defense case.'" *Maine*, 2025 WL 3228256, at *7; *see also Maryland*, 130 F.4th at 391. And the State's request for punitive damages means

"a factfinder may need to understand the specifics of that mixed contamination to determine the extent of any wanton conduct in awarding punitive damages." *Irondale*, 2025 WL 2419238, at *8.

3M therefore "satisfies the nexus element for removal" because "the factfinder will need to identify," if possible, "the sources of" the alleged PFAS contamination, including products 3M manufactured "for the federal government," and because any remedy would unavoidably implicate 3M's work for the government. *Maryland*, 130 F.4th at 391. On 3M's theory of the case (which controls here), the State cannot prove its claim without distinguishing and attributing PFAS from MilSpec AFFF from other PFAS. That "'difficult causation question'" goes to the heart of 3M's federal defense, which 3M is entitled to litigate in federal court. *Raoul*, 111 F.4th at 849 (quoting *Baker*, 962 F.3d at 945 n.3); *see also Maine*, 2025 WL 3228256, at *7-8.

**B.    The Seventh Circuit's Reasoning And The State's Retraction Of Its Prior Concessions Strongly Support Removal**

The core of the State's argument for remand—previously and today—is that its suit carves out contamination that implicates 3M's federal government-contractor defense. This Court and the Seventh Circuit previously agreed (for different reasons). But the Seventh Circuit foreclosed the theory the State previously presented to this Court and that it is *actually* presenting today: that the disclaimer in its complaint of contamination from AFFF (and other non-Cordova sources) avoided any need to consider 3M's defense. *Raoul*, 111 F.4th at 848-49. And the State has abandoned the alternative theory the Seventh Circuit accepted on appeal, which was premised on now-retracted concessions limiting its case to PFAS from the Cordova Facility.

1.    The State previously argued that its disclaimer in its complaint of relief for non-Cordova PFAS (including PFAS from AFFF) meant that any contamination from MilSpec AFFF "is eliminated from the case," leaving no need "to assert the federal government contractor defense." 2023 Remand Order 10, 12. This Court agreed, concluding based on the State's disclaimer

13

that 3M's "actions under federal directive" that implicate its defense did not "relate to the claims brought in the suit." *Id.* at 8.

The Seventh Circuit disagreed, explaining that "the government contractor defense could apply" in this case "*even though* the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF." *Raoul*, 111 F.4th at 848 (emphasis added). Despite the disclaimer, the factfinder still must apportion PFAS from AFFF and non-AFFF sources. *Id.* And ascertaining whether the plaintiff's harm resulted from MilSpec AFFF is an "'example of a difficult causation question that a federal court should be the one to resolve.'" *Id.* at 849 (quoting *Baker*, 962 F.3d at 945 n.3).

2.    The court of appeals affirmed the prior remand based solely on the State's concessions on appeal confining the case to PFAS from the Cordova Facility. 111 F.4th at 849. It held that 3M's government-contractor defense did not apply to the State's claims because of those concessions. *Id.* But the State's discovery responses have eviscerated the basis of the Seventh Circuit's decision affirming the remand order in this case and make clear that the case belongs in federal court.

The court of appeals held that 3M's federal government-contractor defense did not apply solely because "the State clearly and unequivocally conceded at oral argument that it would not seek relief against 3M for mixed PFAS contamination." 111 F.4th at 849. As the court explained, "for the State to recover against 3M for PFAS contamination in a designated area, 100% of that contamination must be sourced from the Cordova Facility," and "[i]f even a morsel of contamination is not from PFAS produced at the Cordova Facility (such as AFFF out of the Rock Island Arsenal), the State's recovery is barred." *Id.* The court affirmed remand on that basis. *Id.*

But the State has now discarded those dispositive concessions, in two key respects. *See*

14

NOR ¶¶ 26-33, 49-53, 78.  First, the State previously stated that it seeks recovery *only* for PFAS contamination that is derived "100%" from the Cordova Facility.  111 F.4th at 849.  But when asked in discovery to admit that it "do[es] not seek any recovery or relief" based on "PFAS that was not produced, manufactured, used, or Released at or from the Cordova Facility," the State declined.  RFA Responses 6.  It now says repeatedly that it will not seek relief only for PFAS from "mil-Spec AFFF *from the Rock Island Arsenal*."  *Id.* at 3 (emphasis added); *see id.* at 5 ("the People admit only that they are not seeking any recovery or relief in this Action for harm or damage derived from mil-spec AFFF contamination from the Rock Island Arsenal"); *id.* at 6-7 (the State is "not seeking any recovery or relief in this Action for harm or damage of any kind derived from mil-spec AFFF contamination from the Rock Island Arsenal").  It otherwise "denied" 3M's request for admission, which merely sought confirmation of the State's earlier concessions.  *Id.*

Second, whereas the State previously conceded that it could not recover at all "[i]f even a morsel of contamination is not from PFAS produced at the Cordova Facility," 111 F.4th at 849, it now says that it can recover because "the PFAS contamination at issue in this Action can be identified and traced back to the Cordova Facility, *even if there are other contaminants* in the same media," RFA Responses 5 (emphasis added).

The State's abandonment of its concessions is fatal to its effort to defeat removal.  The State can no longer contend that 3M's colorable federal government-contractor defense is "wholly irrelevant."  *Raoul*, 111 F.4th at 849.  3M has plausibly alleged that, in the natural resources for which the State seeks to recover, including the Mississippi, alleged PFAS contamination from the Cordova Facility has commingled with PFAS from MilSpec AFFF.  NOR ¶¶ 11-13, 32-33, 55-62.  That includes MilSpec AFFF from the Rock Island Arsenal, downstream from Cordova, which the Seventh Circuit made clear would have sufficed to support removal but for the State's now-

abandoned concessions. *See Raoul*, 111 F.4th at 848. And it also includes MilSpec AFFF from the Savanna Army Depot, *upstream* of the Cordova Facility, which 3M has plausibly alleged commingled with and is indistinguishable from non-AFFF PFAS for which the State seeks relief. And because the State has abandoned its prior concessions confining its case to contamination "wholly derived from the Cordova Facility" alone, *id.* at 849, 3M's federal government-contractor defense is directly implicated. The fact that the complaint disclaims relief for PFAS from AFFF is of no moment because the factfinder still "would need to apportion" PFAS from MilSpec AFFF and non-AFFF PFAS—"'a difficult causation question that a federal court should be the one to resolve.'" *Id.* at 848-49 (quoting *Baker*, 962 F.3d at 945 n. 3).

The State's contention (Mot. 10) that commingling of MilSpec AFFF and non-AFFF PFAS is merely "a hypothetical" fundamentally misunderstands the inquiry. The federal-officer removal analysis turns on whether 3M has plausibly alleged facts that put its federal defense in play. *See Baker*, 962 F.3d at 943. A defendant need not present "'an airtight case on the merits'" of its federal defense before it can invoke its right to litigate the merits in a federal forum. *Id.* (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)). The central "purpose" of the federal-officer removal statute is to ensure that "those acting at the federal government's direction should be able to defend themselves in federal—not state—court." *Maryland*, 130 F.4th at 387. A "federal court" must "adjudicate the scope of [3M's] federal contractor defense for the allegedly commingled PFAS contamination." *Maine*, 2025 WL 3228256, at *8. Nothing in the State's motion casts doubt on the plausibility of 3M's allegations of commingling. The State's assertion (Mot. 10) that it "intend[s] to rely on expert testimony" to *contest* those allegations and show that PFAS in some areas are exclusively from non-MilSpec sources only underscores that apportionment goes to the merits of 3M's defense, which it is entitled to litigate in federal court.

## II.    The State's Contrary Arguments Lack Merit

Attempting to avoid the consequences of its litigation choices, the State tries to downplay them.  The State attempts to reconcile its recent discovery responses with its representations to the Seventh Circuit, but the contradictions are clear and irreconcilable.  The State offers to expand its disclaimer to carve out MilSpec AFFF from the Savanna Army Depot, but the Seventh Circuit decisively rejected that same strategy with respect to the Rock Island Arsenal.  Finally, the State contests the timeliness of 3M's renewed removal and its reliance on the Savanna Army Depot, but those contentions run headlong into settled case law.  None of the State's objections provides any basis to remand.

### A.    The State's Discovery Responses Contradict Its Concessions On Appeal

The State principally argues (Mot. 5-11) that its discovery responses are consistent with its representations to the Seventh Circuit regarding the scope of its claims and that adjudicating the case will require no apportionment of contamination from different sources.  But the inconsistencies are unavoidable and go to the heart of the court of appeals' reasoning, in at least two ways.

*Confined to Cordova.*  The State argued emphatically on appeal that it "ha[s] to prove that 100 percent of the contamination came from Cordova."  CA7 Tr. 12:24-13:2.  That phrasing was not mere shorthand to exclude MilSpec AFFF:  As the State explained, "importantly, this argument is the same, whether … the something else that is 'not Cordova' that caused any given contamination.  It doesn't matter whether that is mil-spec AFFF, whether 3M made it, or whether it's a completely different chemical. … If it's not from Cordova, then the State will not recover."  *Id.* at 16:12-19.  The Seventh Circuit took the State at its word.  *E.g.*, 111 F.4th at 849 ("[F]or the State to recover against 3M for PFAS contamination in a designated area" given the State's concessions, "100% of that contamination must be sourced from the Cordova Facility," and "3M is liable for PFAS contamination only in areas where the contamination is wholly derived from the Cordova

Facility.").

Now, however, the State "admit[s] *only* that [it is] not seeking any recovery or relief in this Action for harm or damage derived from mil-spec AFFF contamination from the Rock Island Arsenal." RFA Responses 5 (emphasis added); *see id.* at 6, 8. The State otherwise denies that it is not seeking recovery for MilSpec AFFF. *Id.* at 6. Those assertions erase the limitation that the Seventh Circuit deemed dispositive, which cabined the State's claims to contamination from a single site (Cordova), and foreclosed relief "[i]f even a morsel of contamination is not from PFAS produced at the Cordova Facility." 111 F.4th at 849.

**No need for apportionment.** The State also forswore on appeal the prospect of apportionment of MilSpec AFFF and non-AFFF PFAS contamination. It represented that, "[i]f the toxins are commingled," "Illinois loses," so there will be "no apportionment whatsoever." CA7 Tr. 11:5-12. It later reiterated that its case "is not going to require any finder of fact to do any kind of apportionment about what may or may not have come from 3M or AFFF" and that the Seventh Circuit's decision in *Baker* is "irrelevant" for that reason. *Id.* at 14:15-18, 16:5-10; *see Raoul*, 111 F.4th at 849 ("[T]he State expressly agreed that a factfinder will not need to apportion the PFAS contamination between sources.").

But now those assurances have evaporated as well. The State acknowledges that contamination *not* derived from the Cordova Facility may be present in the natural resources at issue and that it will rely on expert evidence to distinguish contamination from Cordova from that from other sources. The State said: "[E]xpert testimony will identify PFAS contamination caused by operations at the Cordova Facility and/or Released from the Cordova Facility, and that the PFAS contamination at issue in this Action can be identified and traced back to the Cordova Facility, *even if there are other contaminants in the same media*." RFA Responses 5 (emphasis added); *see id.* at

18

7-8 ("[E]ven if other contamination is present, the People … believe expert testimony can identify PFAS contamination caused by operations at the Cordova Facility and can identify PFAS that was produced, manufactured, used, or Released at or from the Cordova Facility.").  In short, the fact-finder *will* have to engage in apportionment—and in doing so will be resolving factual issues central to 3M's defense, which belong in federal court.

### B.    The State's Hypothetical New Disclaimer As To Savanna Has No Effect

The State alternatively tries to downplay its about-face by belatedly offering yet another disclaimer.  Responding to 3M's allegation that MilSpec AFFF was also released at the Savanna Army Depot, *upstream* of the Cordova Facility, the State now tries (Mot. 7) to expand its carve-out of "MilSpec AFFF from the Rock Island Arsenal" to cover "the Savanna Army Depot" as well. The State asserts (*id.*) that its discovery responses did not mention Savanna only because 3M did not "as[k]," and it offers to memorialize that new disclaimer in a do-over of its RFA Responses.

The State's procedural excuse for failing to exclude the Savanna Army Depot from its claims in its discovery responses is refuted by the record.  3M asked the State to admit categorically that it "do[es] not seek any recovery or relief of any kind in this Action for harm or damage of any kind to any" site "where there is any PFAS that was not produced, manufactured, used, or Released at or from the Cordova Facility."  RFA Responses 6.  The State's answer to 3M's broad question was pointedly narrow:  The State is "not seeking in this Action any recovery or relief for harm or damage of any kind derived from mil-spec AFFF contamination *from the Rock Island Arsenal*." *Id.* (emphasis added).  The State otherwise denied the request for admission.  The State took the Rock Island Arsenal—and only that source—off the table.

More fundamentally, the State's belated offer to disclaim relief for contamination from the Savanna Army Depot from the case is substantively irrelevant for the reason the Seventh Circuit already explained.  That court expressly rejected the State's argument that its disclaimer of

recovery for PFAS contamination from AFFF (and other non-Cordova sources) rendered 3M's federal government-contractor defense irrelevant and justified remand. 111 F.4th at 848. As it explained, if (as 3M has plausibly alleged) some PFAS in the natural resources at issue plausibly come from MilSpec AFFF, "then the government contractor could apply," and "[t]his would be true even though the State's complaint expressly excluded 3M from liability for PFAS contamination sourced from AFFF." *Id.* Again, that is because such a disclaimer does not obviate the need for a factfinder to "apportion the contamination between" multiple sources at areas where commingling occurred—which is ultimately a "'causation question'" that goes to the merits 3M's government-contractor defense. *Id.* at 849; *accord, e.g.*, *Maryland*, 130 F.4th at 391-92 (holding similar disclaimer irrelevant to removal because factfinder still must "disentangle" MilSpec AFFF and non-AFFF PFAS); *Maine*, 2025 WL 3228256, at *7 (concluding disclaimer ineffective where "it would leave 'a state court to determine the nexus between the charged conduct and federal authority'"). Under the State's new theory, a factfinder will need to apportion PFAS contamination between sources in, for example, the Mississippi. That analysis must proceed in federal court.

The State's proposal to rewrite its RFA Responses to exclude the Savanna Army Depot is just another ineffectual disclaimer that does not affect removal for the same reasons. The State's disavowal of relief based on MilSpec AFFF contamination from that facility still requires a factfinder to determine *whether* contamination identified in the natural resources at issue derived from that facility. 3M is statutorily entitled to have that critical factual determination made in federal court.

## C.    The State's Timeliness Objections Are Meritless

Finally, the State argues that removal is untimely. It first asserts (Mot. 7-8) that 3M received no new paper triggering removal. And it then tries to set aside the allegations regarding the Savanna Army Depot, contending (Mot. 11-12) that a removal based on contamination from that

facility is untimely because 3M was aware of the Army Corps of Engineers' Savanna report and the possibility of MilSpec AFFF contamination there years earlier.  But the State misunderstands the governing timeliness principles under controlling precedent.

Section 1446(b) authorizes removal within 30 days of receipt of the "initial pleading" or, "if the case stated by the initial pleading is not removable," within 30 days after receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(b)(1), (3).  The Seventh Circuit, like "[e]very circuit that has addressed the question," applies a "bright-line rule" that "[t]he 30-day removal clock *does not begin to run* until the defendant receives a pleading or other paper that affirmatively and unambiguously reveals that the predicates for removal are present."  *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013) (emphasis added).  The removal clock does not turn on "what the defendant subjectively knew or should have discovered through independent investigation."  *Id.* at 825.  Rather, "the timeliness inquiry is limited to … examining [the] contents of the clock-triggering pleading or other litigation paper; the question is whether *that document*, on its face or in combination with earlier-filed pleadings, provides specific and unambiguous notice that the case satisfies federal jurisdictional requirements and therefore is removable."  *Id.*

That straightforward statutory principle dooms the State's timeliness arguments because the State does not and cannot point to any "clock-triggering pleading or other litigation paper" that 3M received apprising it that the State's suit was removable more than 30 days before 3M filed the renewed notice of removal on October 23, 2025.  The only paper 3M received that triggered the removal clock was the State's RFA Responses (on September 24), which revealed for the first time that the State does not stand by concessions it made on appeal that the Seventh Circuit deemed dispositive.   3M's Savanna-related allegations are based on its "independent investigation."

*Walker*, 727 F.3d at 825.

## CONCLUSION

For these reasons, the Court should deny the State's motion to remand.  Even if the Court grants the State's remand, the Court should deny the State's request for fees because 3M's removal was at least objectively reasonable.

Dated: November 20, 2025                    Respectfully submitted,

*/s/ Lauren R. Goldman*
Lauren R. Goldman (*admission pending*)
Justine Goeke (*admission pending*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-2375
lgoldman@gibsondunn.com
jgoeke@gibsondunn.com

Jonathan C. Bond (*admission pending*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
jbond@gibsondunn.com

*/s/ Daniel L. Ring*
Daniel L. Ring
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Tel: (312) 923-2625
DRing@jenner.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Opposition to Plaintiff People of the State of Illinois'

Motion to Remand complies with this Court's type volume limitations under Local Rule 7.1(B)(4).

The foregoing motion contains 7,000 words including all headings, footnotes, and quotations. *See*

L.R. 7.1(B)(4)(c).

*/s/ Daniel L. Ring*
Daniel L. Ring

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2025, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice of such filing to all counsel of record.

*/s/ Daniel L. Ring*
Daniel L. Ring
