E-FILED
Monday, 21 September, 2026 02:50:09 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS *ex rel.* KWAME RAOUL, Attorney General of the State of Illinois, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:25-cv-04189-SLD-RLH |
| 3M COMPANY, | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Plaintiff People of the State of Illinois's ("the State") Supplemental Brief in Support of Attorneys' Fees in Relation to the Motion to Remand, ECF No. 30, which was filed on CM/ECF as a motion. For the reasons that follow, the State's supplemental request for attorneys' fees is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

On November 26, 2025, the Court granted the State's motion to remand this case to state court and granted the State's request for attorneys' fees under 28 U.S.C. § 1447(c). Nov. 26, 2025 Order 10–11, ECF No. 19. At the Court's direction, the State provided a brief detailing its fees and supporting evidence. *See generally* Br. Supp. Fees, ECF No. 28. The State requested $304,261.00 in attorneys' fees and $2,387.15 in litigation expenses. *Id.* at 8. Defendant 3M Company ("3M") opposed the State's request for fees, Resp. Mot. Remand 22, ECF No. 16, but did not contest the amount of the fees sought by the State, Resp. Br. Supp. Fees 1, ECF No. 29. The Court granted the State $2,387.15 in expenses but denied the request for attorneys' fees without prejudice to refiling with a brief addressing the amount of attorneys' fees actually

incurred and the appropriate measure of fees for assistant attorney generals ("AAGs"). *See* Jan. 27, 2026 Text Order.

The State filed its supplemental brief on February 17, 2026, explaining that the Office of the Illinois Attorney General retained DiCello Levitt LLP as outside counsel on a contingent basis. Suppl. Br. 2. The State argues that the Court can award attorneys' fees for DiCello Levitt LLP's work based on reasonable hourly rates even though it has been retained by the State on a contingent basis and that "the proper measure of attorneys' fees for the time AAGs worked as a result of 3M's removal is properly a reasonable hourly rate, not a proportional share of their salaries." *Id.* at 2–3. 3M did not file a response to the supplemental brief.

## DISCUSSION

### I. Legal Standard

Under 28 U.S.C. § 1447(c), a court can "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of" a removal when remanding a case to state court. Section 1447(c) allows a court to award only the actual fees the party opposing remand incurred. *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 366–67 (7th Cir. 2000). A "district court . . . has discretion 'to tailor the documentation requirement' according to the stakes involved." *Id.* (quoting *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000)).

### II. Analysis

#### a. DiCello Levitt LLP Attorneys

The Seventh Circuit has not decided whether § 1447(c) permits fee awards for work done on a contingency fee basis. *See Tenner v. Zurek*, 168 F.3d 328, 330 n.3 (7th Cir. 1999) ("We reserve for another day the appropriate application of § 1447(c) in [the] circumstance[][where the party has a contingency fee agreement with counsel]."); *Ray v. Tabriz*, No. 23 CV 1467,

2024 WL 4333247, at *7 (N.D. Ill. Sep. 28, 2024) (recognizing that this still appears to be an open question). Nevertheless, district courts in the Seventh Circuit have routinely awarded fees for contingent work under § 1447(c). *See, e.g.*, *Beal v. Armstrong Containers, Inc.*, No. 22-cv-378-pp, 2025 WL 1578073, at *2 (E.D. Wis. June 4, 2025); *Ray*, 2024 WL 4333247, at *7–8; *Price v. Smith*, No. 11–C–0763, 2012 WL 3647275, at *2 (E.D. Wis. Aug. 22, 2012). These courts reason that the statute allows awarding fees *incurred* rather than the fees *billed* to a client and note that awarding fees to attorneys working on a contingent basis serves the purposes of § 1447(c), which are to deter improper removals and to make whole the party who has to oppose an improper removal. *See, e.g.*, *Ray*, 2024 WL 4333247, at *7–8. The Court is convinced based on this reasoning that it may award fees to DiCello Levitt LLP attorneys even though the firm has been hired on a contingent basis.

Courts awarding fees under § 1447(c) for work done on a contingent basis often calculate the amount of fees incurred using the lodestar method: multiplying a reasonable hourly rate by the number of hours reasonably expended. *See, e.g.*, *Beal*, 2025 WL 1578073, at *2. They use this method because the attorney representing a party on a contingent basis forgoes other work that could have been paid at market rate. *See Simenz v. Amerihome Mortg. Co.*, 544 F. Supp. 2d 743, 746 (E.D. Wis. Mar. 28, 2008) ("[B]ecause plaintiff's attorneys are employed by a firm, and are not salaried counsel, the best way of calculating their costs is to consider their market rate. Their inability to collect fees at the market rate while contesting an unreasonable removal constituted an actual expense." (quotation marks omitted)). A reasonable hourly rate should reflect the local market rate. *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in

line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The State argues that Chicago is the appropriate market for determining DiCello Levitt LLP attorneys' reasonable hourly rates because DiCello Levitt LLP is based in Chicago and the Office of the Attorney General's Environmental Bureau North, which has primary responsibility for overseeing the State's PFAS litigation, including this case, is located in Chicago. Br. Supp. Fees 2, 4. It further argues that, even if the Court finds that Rock Island is the relevant local market, the Court should apply deference to DiCello Levitt LLP's out-of-town rates because this case requires specialized skills and knowledge. *Id.* at 4–5.

It makes sense to consider Chicago's market rates in this case because the Court is attempting to approximate what fees DiCello Levitt LLP is forgoing by working for the State on this matter. Doing so is also supported by case law on out-of-town attorney rates. *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743–44 (7th Cir. 2003) (holding that "if an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount" although a judge could "allow only an hourly rate which local attorneys would have charged" if there is no reason for an out-of-town attorney to perform the work (quotation marks omitted)). Stephen Sylvester, Chief of the Environmental Bureau North, provided a declaration stating that the Office of the Attorney General retained DiCello Levitt LLP as outside counsel because it has "the relevant experience representing states in similar, complex litigation." Sylvester Decl. ¶¶ 7–11, Br. Supp. Fees Ex. C, ECF No. 28-3.

DiCello Levitt LLP seeks fees at the following rates: for Adam J. Levitt, partner, $1,650; for Daniel Rock Flynn, partner, $1,350; for Anna Claire Skinner, partner, $1,155; for Elizabeth

Carpenter, associate, $550; for James Crisafulli, associate, $500; for Joyland Morris, paralegal, $480; and for Alajandra Lemus, paralegal, $480. Br. Supp. Fees 6. Flynn provided a declaration indicating that DiCello Levitt LLP has "extensive environmental and public client litigation experience across the country" and "has received recognition for [its] litigation." Flynn Decl. ¶ 10, Br. Supp. Fees Ex. A, ECF No. 28-1. Levitt has been in practice for 32 years and "has held a leadership role in dozens of significant cases in complex multidistrict, public client, and class action litigations." *Id.* ¶¶ 12–13. Flynn has been in practice for 21 years, and Skinner has been in practice for 11 years. *Id.* ¶ 14. They "have litigated complex environmental cases across the country on behalf of public entities, classes comprised of communities impacted by pollution, and individuals exposed to toxic pollutants." *Id.* ¶ 15. Associates Carpenter and Crisafulli "focus exclusively on environmental litigation in their practices, including assisting state attorneys general in pursuing claims for PFAS and AFFF contamination, PCB contamination, and climate change deception, and assisting communities impacted by catastrophic releases of hazardous chemicals." *Id.* ¶ 17. Morris is the primary paralegal on the case and "has worked with the firm for many years on complex litigation where her paralegal support has been critical to timely and cohesive case management." *Id.* ¶ 18. Lemus is the backup paralegal on the case. *Id.* ¶ 19.

Flynn states that the rates requested "are those [the firm] charge[s] for services in contingent matters." *Id.* ¶ 26. Flynn states that the firm's "billing rates are consistent with those charged by similarly experienced counsel in [its] geographic area and are commensurate with those prevailing in the market for such legal services furnished in complex class action and/or public client litigation." *Id.* ¶ 27. The Court finds that the State has provided sufficient evidence to establish that the rates requested are reasonable.

The State has provided detailed time entries for DiCello Levitt LLP's attorneys and paralegals. *See* Time Entries, Br. Supp. Fees Ex. D, ECF No. 28-4. The Court has reviewed them and, especially considering that 3M has not objected to the amount of attorneys' fees sought, finds all hours reasonably expended. Accordingly, the Court awards fees based on the following hours: for Levitt, 14.3 hours; for Flynn, 84 hours; for Skinner, 99.4 hours; for Carpenter, 11.5 hours; for Crisafulli, 73.5 hours; for Morris, 1.2 hours; and for Lemus, 1 hour. Based on these hourly totals and the above-identified rates, the State is awarded $295,933 for DiCello Levitt LLP's attorneys' fees.

**b. AAGs**

In *Hotline Industries*, the Seventh Circuit held that § 1447(c) allows for an award of attorneys' fees based on work performed by salaried government lawyers. *Hotline Indus.*, 236 F.3d at 365–66. It further held that § 1447(c) is unlike civil rights statutes that "authorize the recovery of 'reasonable' attorney's fees" in that it allows only for recovery of expenses actually incurred. *Id.* at 366–67. The Seventh Circuit vacated the district court's order, which had awarded the State of Wisconsin's salaried government attorneys fees at "a reasonable market rate," *id.* at 364–65, and instead held that that the State of Wisconsin's recoverable costs "include[d] its actual attorney's fees incurred (a proportional share of the salaries of its attorneys handling the removal) plus related overhead costs." *Id.* at 367–68. Based on this reasoning, the Court indicated in its text order denying the State's first request for attorneys' fees that the proper measure of fees incurred for the AAGs' work in this case is "likely 'a proportional share of the salaries of [the] attorneys handling the removal' rather than standard market rates." Jan. 27, 2026 Text Order (alteration in original) (quoting *Hotline Indus.*, 236 F.3d at 368)).

In its supplemental brief, the State argues that it is appropriate to award fees for the AAGs' work in this case based on reasonable hourly rates. *See* Suppl. Br. 5. It frames the Seventh Circuit's statement about the proportional share of the lawyers' salaries in *Hotline Industries* as one potential measure of attorneys' fees for government attorneys rather than as dictating the only appropriate measure of attorneys' fees for government attorneys. *Id.* The State explains that "[c]ourts in the Seventh Circuit have not limited the fees available to government attorneys under section 1447(c) to a mere proportion of their salary." *Id.* But in support of this contention, it cites to only two Seventh Circuit district court cases. *Id.* And neither persuades the Court that its read of *Hotline Industries*—that fees for salaried government attorneys under § 1447(c) should be based on a proportional share of their salaries plus overhead costs—is wrong.

The State first cites *Wisconsin v. Amgen Inc.*, No. 06-C-0582-C, 2007 WL 5582714 (W.D. Wis. Mar. 29, 2007). Suppl. Br. 5. But, as relevant to this issue, the order in that case merely says that the defendant "d[id] not object to the hourly rates charged by the lawyers representing the state." *Wisconsin*, 2007 WL 5582714, at *1. It does not engage with *Hotline Industries*'s reasoning or analyze the proper measure of fees for government lawyers. Moreover, the district court's award of fees was vacated on appeal because the Seventh Circuit found that the defendant had a reasonable, though ultimately unsuccessful, basis to seek removal. *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 534–35 (7th Cir. 2008). The State next cites *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1053 (C.D. Ill. 2009), along with a docket entry from that case. Suppl. Br. 5. In that case, the judge decided that the State of Illinois was entitled to fees under § 1447(c) and directed it to file a statement of its costs and fees. *SDS W. Corp.*, 640 F. Supp. 2d at 1053. The State of Illinois did so, using hourly rates of $200 for government

attorneys, *see* Aff., No. 3:09-cv-03128-RM-CHE (C.D. Ill. Aug. 6, 2009), ECF No. 18, and the defendant filed no objections. But there was no court order actually awarding the fees, so there was no court order addressing the proper measure of fees under *Hotline Industries*.

The State cites to out-of-circuit authority as well, arguing that it also supports the argument that a reasonable hourly rate is an appropriate way to calculate the fees incurred for salaried government attorneys under § 1447(c). Suppl. Br. 5–6 & nn.3, 4. But, again, none of the cited authority persuades the Court that it can award fees for government lawyers in this manner. Two of the cited cases, *Kansas ex rel. Morrison v. Price*, 242 F. App'x 590 (10th Cir. 2007), and *King v. Alpha Sigma Tau National Foundation, Inc.*, No. 4:20-CV-00778, 2020 WL 7041767 (M.D. Pa. Dec. 1, 2020), involved fees for private attorneys rather than government attorneys. *See* Accounting of Fees & Costs, *Kansas ex rel. Kline v. Price*, No. 5:06-cv-04082-JAR-KGS (D. Kan. Oct. 11, 2006), ECF No. 20; *King*, 2020 WL 7041767, at *1. *King* specifically involved a contingency arrangement. *King*, 2020 WL 7041767, at *1. The Court has already explained why it makes sense to use market rate for a private attorney retained on a contingent basis: it approximates the fees the attorney has forgone to work on the matter. A salaried government attorney, by contrast, could not charge private market rates to work on other matters.

Many of the other cases the State cites apply the lodestar method or determine whether the rates and hours reported are reasonable, which the Seventh Circuit found was not appropriate for salaried government attorneys in *Hotline Industries*, 236 F.3d at 366–69. *See Puerto Rico v. Tex. Armoring Corp.*, No. 21-1209 (PAD), 2021 WL 5314331, at *3 (D.P.R. Nov. 15, 2021); *N.C. ex rel Stein v. Tinted Brew Liquid Co.*, No. 1:19-CV-886, 2020 WL 13553831, at *1 (M.D.N.C. Jan. 30, 2020); *N.D. ex rel. Stenehjem v. Simple.net, Inc.*, No. 1:08-cv-002, 2008 WL

1806205, at *1 (D.N.D. Mar. 31, 2008); *State ex rel. Nixon v. Nextel W. Corp.*, 248 F. Supp. 2d 885, 894 (E.D. Mo. 2003). Some of the cases the State cites are not about attorneys' fees under § 1447(c) at all. *See Ramirez v. Merced Cnty.*, No. 1:11-CV-531 AWI DLB, 2013 WL 4780440, at *8 (E.D. Cal. Sep. 5, 2013) (determining attorney's fees under 42 U.S.C. § 12205); *NLRB v. Loc. 3, Int'l Bhd. of Elec. Workers*, 471 F.3d 399, 406–07 (2d Cir. 2006) (reviewing an award of attorneys' fees in a contempt proceeding). And the remaining cases cited contain little analysis about the appropriate measure of fees for government attorneys under § 1447(c) and no discussion of the Seventh Circuit's holding in *Hotline Industries* or its reasoning. *See Kent State Univ. Bd. of Trs. v. Lexington Ins.*, 512 F. App'x 485, 493–94 (6th Cir. 2013) (Table); *Texas v. Melton*, No. A-16-CA-863-SS, 2016 WL 4718434, at *3 (W.D. Tex. Sep. 9, 2016); *People of Colo. v. Ritz*, No. 08-cv-00993-REB-KMT, 2008 WL 4830794, at *3 (D. Colo. Nov. 5, 2008). These cases are not persuasive to the Court either.

Other courts have read *Hotline Industries* in the same manner as this Court, that is, as holding that a salaried government attorney that does not bill the client incurs fees based on a proportional share of his salary plus related overhead costs. *McBride v. Hous. Auth. of Cnty. of Jackson*, No. 25-CV-01025-SPM, 2025 WL 3221132, at *1–2 (S.D. Ill. Oct. 10, 2025); *see also, e.g.*, *Portis v. City of Chicago*, No. 02 C 3139, 2004 WL 2812084, at *3 n.9 (N.D. Ill. Dec. 7, 2004) (describing *Hotline Industries* as ruling that "the district erred by awarding attorney's fees based on prevailing market rates rather than the attorney's fees that were actually incurred by the government . . . (*i.e.*, a proportional share of the government attorneys' salaries plus related overhead)").

The State does not provide any information about the AAGs' salaries or overhead costs. Accordingly, the Court cannot calculate the attorneys' fees the State has incurred for work done by the AAGs because of the wrongful removal and no attorneys' fees are awarded for this work.

**CONCLUSION**

For the foregoing reasons, Plaintiff People of the State of Illinois's ("the State") request for attorneys' fees in the Supplemental Brief in Support of Attorneys' Fees in Relation to the Motion to Remand, ECF No. 30, is GRANTED IN PART and DENIED IN PART. The State is awarded $295,933 for DiCello Levitt LLP's attorneys' fees.

Entered this 21st day of September, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE